Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS






NORA ALFARO,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-05-00117-CR

Appeal from the

83rd District Court

of Pecos County, Texas 

(TC# 2575)



 

 

 





O P I N I O N

            Nora Alfaro appeals her conviction of hindering apprehension. A jury found Appellant guilty
of Count I of the indictment and it assessed her punishment at imprisonment for two years,
suspended for two years. Finding the evidence legally sufficient to support her conviction, we
affirm.
FACTUAL SUMMARY
            Appellant was charged with two counts of hindering apprehension alleged to have been
committed on May 1, 2002 (Count II) and May 17, 2002 (Count I). The jury found Appellant guilty
of Count I, but acquitted her of Count II.
            On August 16, 2000, the juvenile court in Pecos County determined that C.A., Appellant’s
son, had engaged in delinquent conduct by committing burglary of a building, and the court placed
him on juvenile probation. C.A. lived with Appellant in Fort Stockton. On April 23, 2002, the
juvenile court conducted a modification hearing, found that C.A. violated the terms and conditions
of probation, and determined that he should be committed to the Texas Youth Commission. 
Appellant was present at the modification hearing. Appellant’s aunt, Wanda Duarte, and one of
Appellant’s neighbors, Martha Palacios, also attended.
            Because the disposition order had to be re-drafted, C.A.’s probation officer, James
Valenzuela, left the courthouse and returned to his office. The juvenile court judge instructed C.A.
to remain in the courtroom while they prepared the paperwork. Valenzuela, who did not give C.A.
permission to leave, also expected C.A. to remain in the courtroom since the juvenile court had
committed him to TYC. The prosecutor, Kevin Acker, went outside to his car while waiting for the
paperwork to be completed. He observed Appellant, C.A., and two other females standing outside
of the courthouse. Acker asked them what they were doing outside and someone in the group
replied, “Smoking a cigarette.” Acker told them to go back inside the courtroom and he followed
to make sure they did so. A while later, Acker saw that the group had again left the courtroom and
he instructed them to go back inside. According to Acker, the group “drifted out” once again and
that was the last time he saw them.
            William Jackson, a criminal investigator with the Fort Stockton Police Department, was also
present in the courtroom at the modification hearing. As he was leaving the courthouse, Jackson saw
Appellant and C.A. standing outside with some other people. C.A. was nervous and saying, “Oh,
s--t; oh, s--t. I don’t want to go; I don’t want to go.”
            Valenzuela returned to the courthouse. Upon learning that C.A. could not be found, he and
a police officer went to Appellant’s home. Appellant was at home but C.A. could not be located. 
Consequently, the juvenile court entered a directive to apprehend C.A. which stated that probable
cause existed for any probation officer or law enforcement officer to take the child into custody. On
May 8, 2002, the Pecos County Juvenile Probation Office sent a letter to Appellant by certified mail
which advised her that the juvenile court had issued the directive to apprehend, and requested that
she contact the office immediately if her son contacted her or if she had knowledge of his
whereabouts.
            Sometime in April of 2002, C.A. began dating Samantha Alvarez, who was married. 
Samantha first met C.A. at Martha Palacios’ home and she recalled that C.A. was there every time
she went to visit Martha. On May 1, 2002, Samantha told Martha that she was leaving her husband
and going to live with her mother, Linda Alvarez, in Midland. C.A. asked if he could go with her
and she agreed. At Samantha and C.A.’s request, Appellant drove them to Linda’s apartment in
Midland. Linda had never met or talked to Appellant before that day. Appellant asked if C.A. could
stay with her for a few days and Linda agreed. Before leaving Midland, Appellant gave C.A. her
insurance card.
            After a few days, Linda told C.A. that he could not stay with her any longer because her
boyfriend was returning home and he would be jealous. C.A. left for a weekend, but he returned to
the apartment on the following Monday and stayed several more days. During this time period,
Appellant returned to Midland on one occasion and took C.A. shopping.
            Samantha began working at a store called Limited Too in Midland. After approximately one
week at the apartment, Linda told Samantha and C.A. that they could not stay with her any longer. 
Appellant picked C.A. up and took him to the home of Samantha’s father, but after one day, he did
not want C.A. to stay with him either. On Mother’s Day, Appellant called Samantha at work and
told her to let C.A. know that she was on her way to pick him up and that he should meet her in front
of the mall. C.A. told Samantha that he was going to Austin with his mother to see his brother
graduate. A few days later, Jackson spoke with Samantha and she informed him of the travel plans
to Austin.
            Jackson was assigned to investigate C.A.’s disappearance and learned that C.A. had been
seen at the mall in Midland. Jackson spoke with C.A.’s best friend, Chad Brown, who gave him an
address in Midland where C.A. was staying. On May 13, 2002, Jackson went to the address in an
unmarked car and began watching the apartment. At some point, Jackson saw Samantha and Linda
leave the building. Jackson pulled them over and asked about C.A.’s location. They told him that
C.A. had been staying there, but Appellant had picked him up and they had returned to Fort
Stockton. Jackson interviewed Samantha again on May 15 and she told him that C.A. and Appellant
were going to Austin on May 17. Jackson interviewed Linda on May 16 and learned that C.A. had
stayed with her approximately one week. Linda gave Jackson the Appellant’s insurance card that
C.A. had left behind. Jackson also obtained information from Linda’s caller ID about one call made
to the apartment on May 12 and a second call made on May 15. As part of his investigation, Jackson
obtained Appellant’s cellular telephone records. Sixteen calls had been made from Appellant’s cell
phone to Linda’s phone between May 1, 2002 and May 15, 2002. Three calls were made from
Appellant’s cell phone to the home of Samantha’s father between May 9 and 12. One call was made
to Samantha’s work place on May 12.
            On May 17, the Fort Stockton Police Department asked the Pecos County Sheriff’s Office
to locate Appellant’s vehicle on Interstate 10. Deputy Sheriff Cody Yarbrough responded to the call
from Iraan and was traveling west on I-10 when he spotted the vehicle traveling eastbound on I-10
about four miles east of Bakersfield. Yarbrough turned around and followed the vehicle for a few
miles until he had backup. He initiated a traffic stop at mile marker 304 or 305. A border patrol
agent was present when he made the stop and Deputy Lynn Holland arrived shortly thereafter. 
Yarbrough determined that Appellant was driving the vehicle and C.A. was seated in the right rear
passenger seat. Both Appellant and C.A. were placed under arrest. Appellant’s six-year-old son and
Chad Brown were also in the car. The deputies transported all of the occupants to Fort Stockton.             At trial, C.A. testified that after the modification hearing, his attorney gave him permission
to go outside and talk with his family. C.A. did not want to go to TYC, so he told Appellant that the
judge said he could go home while the paperwork was prepared. Appellant dropped him off at the
house and then left to pickup the other children from school. C.A. went inside, packed up his
clothes, and called Brandon Connor for a ride. Brandon picked him up and they returned to
Brandon’s house. C.A.’s sister, Marissa, came to the house later and told him that the police were
looking for him. C.A. slept in a car behind his mother’s house that night and went to Martha
Palacios’ house the next morning. He did not want to return home because he knew his mother
would call the police. He saw Samantha several times when he was walking around or at Martha’s
house, and at one point, she asked whether he wanted to go to Midland with her.
            According to C.A., Samantha’s mother picked them up in Fort Stockton and took them to
Midland. While C.A. was at the apartment, Marissa called several times. He did not receive any
calls from his mother. On May 17, C.A. decided he wanted to return to Fort Stockton and turn
himself in. He called Appellant to see if she would pick him up. Appellant was leaving town for
Austin and she told C.A. to turn himself in. Linda’s boyfriend drove C.A. to Fort Stockton. As they
approached town, C.A. called Appellant and she agreed to meet him on I-10. C.A. eventually saw
his mother’s car and she pulled over and picked him up. Appellant was angry with C.A. and “cussed
him out.” She said she would turn him over to the authorities at the next town. About five minutes
later, a law enforcement officer pulled over the car and arrested him.
            Appellant testified in her own defense. At the time of trial, she was employed by the Texas
Department of Criminal Justice-Institutional Division as a correctional officer. Appellant recalled
that at the conclusion of the modification hearing, the juvenile court judge told everyone to return
the following day for C.A.’s commitment to TYC. C.A.’s attorney also recalled that the judge told
them to return the following day. Appellant dropped off C.A. at their home and she left to pick up
her other children from school. When she returned, C.A. was not at home. When the officers
arrived looking for C.A., she discovered C.A. had lied to her and she was upset. Appellant told them
that they could come inside and search her home. Appellant did not expect C.A. to return home
because he knew that she would call the police. She did not know where to look for him, but she
asked Chad Brown several times where he was. Marissa kept Appellant’s cell phone and used it
most of the time. She did not know that Marissa knew where C.A. was or that she was talking to
him.
            Appellant denied ever meeting Linda Alvarez, but she had called Midland looking for her
son because she had heard a rumor that he was there with a girl. She spoke to Linda only once and
told her to turn her son in. Contradicting Linda Alvarez’s testimony, Appellant said she gave C.A.
an insurance card in 2000 when he was in juvenile custody.
            Appellant had been planning for several months to attend her son’s graduation in Austin on
May 18. On the morning of May 17 as Appellant was preparing to leave town, C.A. called on the
cell phone and said he wanted to turn himself in. He suggested that they meet somewhere out on I-10. Appellant did not call the police because she was scared and “thinking like a mother.” As
Appellant was leaving her house, Chad Brown ran up to the car and invited himself along on the trip. 
Although she did not like him, Appellant let him travel with her. Some thirty-eight miles east of Fort
Stockton, Appellant saw a vehicle pulled over on the side of the highway. C.A. exited the vehicle
and ran towards her. She stopped and picked him up. After traveling a few miles further east, a
Border Patrol agent pulled them over and arrested both of them. Had she known where C.A. was
located, she would have called the police. Appellant did not turn around and return C.A. to Fort
Stockton because she did not want to “mess up” her plans. She admitted that she had time to return
him to Fort Stockton, but she decided instead to head for Iraan.


 She did not know that there is no
jail in Iraan.
MATERIAL VARIANCE
            In Point of Error One, Appellant contends that the trial court erred in denying her motion for
instructed verdict because there is a material variance between the indictment and the proof at trial
in that the indictment alleges C.A. was charged with burglary of a building, but the evidence showed
he was charged with felony escape. Although Appellant frames her point of error as a challenge to
the trial court’s ruling on her motion for instructed verdict, such a challenge is in actuality a
challenge to the legal sufficiency of the evidence to support the conviction. Brimage v. State, 918
S.W.2d 466, 470 n.1 (Tex.Crim.App. 1994); Madden v. State, 799 S.W.2d 683, 686 n.3
(Tex.Crim.App. 1990). 
 

            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We consider all
of the evidence, whether admissible or inadmissible. Wilson v. State, 7 S.W.3d 136, 141
(Tex.Crim.App. 1999); Johnson v. State, 967 S.W.2d 410, 412 (Tex.Crim.App. 1998). We do not
resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier
of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted
at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843.
Further, the standard of review is the same for both direct evidence and circumstantial evidence
cases. Geesa, 820 S.W.2d at 158.
            A person commits hindering apprehension if, with intent to hinder the arrest, prosecution,
conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention,
adjudication, or disposition of a child for engaging in delinquent conduct that violates a penal law
of the grade of felony, she: (1) harbors or conceals the other; (2) provides or aids in providing the
other with any means of avoiding arrest or effecting escape; or (3) warns the other of impending
discovery or apprehension. Tex.Penal Code Ann. §38.05(a)(Vernon 2003).


 The offense is a
third-degree felony if the defendant knew that the other person is under arrest for, charged with, or
convicted of a felony, or if the other person is a juvenile, that the juvenile was in custody or
detention, or had been adjudicated as having engaged in delinquent conduct that violates a penal law
of the grade of felony. Tex.Penal Code Ann. §38.05(c)(Vernon 2003).
            Count I of the indictment alleged that Appellant, on or about May 17, 2002:
[D]id then and there, with the intent to hinder the arrest, prosecution, conviction, and
punishment of [C.A.], provide [C.A.] with a means of avoiding arrest to wit: 
transporting [C.A.] out of Pecos County, Texas, and the defendant knew that the said
[C.A.] was charged with a felony, to wit: Burglary of a Building . . . .

The court’s charge tracked the language of the indictment. 
            The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge, not by the actual charging instrument. See Malik v. State, 953 S.W.2d 234, 240
(Tex.Crim.App. 1997). A hypothetically correct jury charge accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State’s burden of proof or unnecessarily
restrict the State’s theories of liability, and adequately describes the particular offense for which the
defendant is tried. Id. A hypothetically correct jury charge need not incorporate allegations that give
rise to immaterial variances. Gollihar v. State, 46 S.W.3d 243, 256 (Tex.Crim.App. 2001). A
variance is only material if it is prejudicial to a defendant’s substantial rights. Id. at 247-48.
            The evidence at trial showed that C.A. had been adjudicated as a juvenile for a burglary of
a building offense in 2000 and the juvenile court modified C.A.’s disposition on April 23, 2002 by
committing him to TYC. C.A. absconded before he could be taken into custody. According to
Appellant, C.A. was charged with felony escape. Appellant argues that a hypothetically correct jury
charge would have asked the jury whether Appellant, knowing that C.A. was charged with felony
escape, provided him with a means of avoiding arrest. We disagree. The State obviously intended
to prosecute Appellant for providing C.A. with a means of avoiding arrest following his commitment
to TYC and it offered evidence in support of this theory of prosecution at trial. The indictment,
however, alleged the offense as if C.A. were an adult who had been charged with burglary of a
building rather than alleging that he had been adjudicated as a juvenile for the offense. Under these
facts, a hypothetically correct jury charge would ask the jury if Appellant did, with the intent to
hinder the arrest, detention, adjudication, or disposition of C.A. for engaging in delinquent conduct
that violates a penal law of the grade of felony, provide C.A. with a means of avoiding arrest. The
question, then, is whether the substitution of the hypothetically correct elements prejudiced
Appellant’s substantial rights.
            Appellant’s substantial rights are prejudiced only if the information or indictment failed to
inform her sufficiently of the charge against her to allow her to prepare an adequate defense at trial,
or if prosecution under the deficiently drafted indictment would subject Appellant to the risk of being
prosecuted later for the same crime. Gollihar, 46 S.W.3d at 257. We conclude that the variance did
not mislead Appellant or impair her ability to prepare a defense. While Appellant took the position
at trial that the indictment alleged the wrong underlying offense because C.A. was no longer charged
with the burglary of a building offense since he had already been adjudicated for it, this was only
one aspect of a multi-faceted defense. The primary focus of Appellant’s defense was to prove that
she did not provide C.A. with a means of avoiding arrest, and she did this by directly meeting the
State’s theory of the case and its evidence. Appellant never contended at trial that she did not know
C.A. had been adjudicated of the burglary offense or committed to TYC. Instead, she put on
evidence that she did not transport him to Midland, she did not know where he was located, she
intended to immediately turn him in at the next town after she picked him up on I-10, and she had
no intent of transporting him out of Pecos County.
            Appellant does not provide any authority for her argument that she could be prosecuted twice
for hindering apprehension. The Double Jeopardy Clause protects against prosecution for the same
offense after a conviction or an acquittal, and against multiple punishments for the same offense. 
North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), overruled
on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989);
Lopez v. State, 108 S.W.3d 293, 295-96 (Tex.Crim.App. 2003). The gravamen of hindering
apprehension is providing the other person with a means of avoiding arrest or effecting escape while
acting with the requisite mental state, that is, the intent to hinder the arrest, prosecution, conviction,
or punishment of the other person for “an offense.” See Key v. State, 800 S.W.2d 229, 230-31
(Tex.App.--Tyler 1990, pet. ref’d). The actor’s intent “to hinder the arrest, prosecution, conviction,
or punishment of another for an offense” is an essential element of the offense. Tex.Penal Code
Ann. §38.05. Whether Appellant provided C.A. with a means of avoiding arrest by driving him
away from Pecos County on May 17, 2002 with the intent to hinder his arrest for felony escape or
whether she engaged in this conduct with the intent to hinder his arrest on the juvenile court’s
directive to apprehend, it is the same offense for double jeopardy purposes. Therefore, she is subject
to only one prosecution for the offense. We conclude that Appellant’s substantial rights are not
prejudiced.
            When the evidence is examined in the light most favorable to the verdict, a jury could have
reasonably determined beyond a reasonable doubt that Appellant, acting with the intent to hinder the 
adjudication or disposition of C.A. for engaging in delinquent conduct that violates a penal law of
the grade of felony, provided C.A. with a means of avoiding arrest. The evidence is therefore legally
sufficient to support her conviction. Point of Error One is overruled.
PROVIDING MEANS OF AVOIDING ARREST
            In Point of Error Two, Appellant challenges the legal sufficiency of the evidence supporting
the allegation that she provided C.A. with a means of avoiding arrest by transporting him out of
Pecos County, Texas. She asserts that there is no evidence that she intended to transport Appellant
out of Pecos County given that she and C.A. testified that she intended to turn him in at the next
town. She argues that there is no other evidence of her intent, and therefore, the evidence is
insufficient to prove this element. We disagree. In a legal sufficiency review, we are not required
to accept Appellant’s testimony of her intent or her view of the evidence as true particularly given
that the jury rejected it by finding her guilty. Instead, we view the evidence in the light most
favorable to the verdict to determine whether the jury’s explicit and implicit findings are supported
by the evidence. We conclude that the evidence, when viewed under the proper standard, is
sufficient to prove beyond a reasonable doubt that Appellant provided C.A. with a means of avoiding
arrest.
            Appellant knew C.A. had been committed to TYC and the juvenile court in Pecos County
had issued a warrant for him to be taken into custody. Although Appellant claimed that she would
have turned Appellant over to the police if she had known of his location, her conduct is inconsistent
with that claim. Appellant testified she had heard a rumor that C.A. was staying in Midland, and she
had the phone number of the apartment where he was reportedly staying, yet she did not provide this
information to the police so that C.A. could be located.


 On the morning of May 17, 2002, C.A.
allegedly called Appellant and said that he had decided to return to Fort Stockton and turn himself
in to the police. Again, Appellant did not notify the police. Samantha Alvarez contradicted
Appellant’s and C.A.’s testimony that he was not traveling to Austin with Appellant. According to
Samantha, C.A. had told her shortly before May 17 that he was going to Austin with his mother to
attend his brother’s graduation. As a further indication that C.A. was accompanying Appellant to
Austin, his best friend appeared at the house as Appellant was leaving for Austin and invited himself
along on the trip without any objection from her even though she admittedly did not like him. From
this evidence, the jury could have believed that Appellant intended for C.A. to go with her to Austin. 
Appellant’s claims to the contrary are belied by her failure to wait for C.A. to arrive in Fort Stockton
and take him directly to the appropriate authorities or return him to Fort Stockton after she picked
him up near Bakersfield. Her only explanation for this behavior is that she did not want to “mess
up” her travel plans. Another inference which could be drawn is that Appellant wanted C.A. to
avoid being seen in Fort Stockton where she knew there was an outstanding warrant for him.
            The evidence is legally sufficient to support the jury’s conclusion that Appellant provided 

C.A. with a means of avoiding arrest by transporting him out of Pecos County. We overrule Point
of Error Two and affirm the judgment of the trial court.
 
                                                                        ANN CRAWFORD McCLURE, Justice

December 7, 2006

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment, not participating

(Do Not Publish)