COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-07-00101-CV |
| | § | Appeal from the |
| IN THE MATTER OF R.A., A JUVENILE | § | 289th Judicial District |
| | § | of Bexar County, Texas |
| | § | (TC# 2006-JUV-01730) |
| | § | |

**O P I N I O N**

This is an appeal from a conviction for aggravated sexual assault and indecency with a child. Appellant argues on appeal that the evidence was legally and factually insufficient to support the conviction. Appellant also argues that his constitutional right to be free from double jeopardy was violated by the filing of the present case. We affirm.

C.K., the ten-year-old complainant, lived with her grandmother Ellen Cross. In March 2005, she spent spring break at her mother Jennifer Armstrong's house along with Ms. Armstrong's husband, Rodney Armstrong, and his five children. Appellant is C.K.'s fourteen-year-old stepbrother.

Ms. Cross testified that in April 2005, C.K. made an outcry. C.K. told Ms. Cross that on March 15, 2005, Appellant came into the livingroom where C.K. was sleeping and got on top of her in the middle of the night. Appellant told C.K. he was going to give her a massage. He then touched C.K.'s genital area under her shorts. He opened C.K.'s legs, spread them back, and pulled her shorts to the side. C.K. testified that Appellant put his "middle part" in her "middle part." At trial, C.K. demonstrated what a "middle part" was and demonstrated the motion

Appellant made during the incident. C.K.'s demonstration and explanations indicated that Appellant had inserted his penis into her vagina during the assault. C.K. tried to escape but Appellant held her down on the couch.

After the assault, Appellant got a washrag and cleaned C.K.'s genital area. C.K. did not yell during the attack because her mother had told her not to yell in the house, and C.K. feared getting her stepbrother in trouble. The next morning, C.K. noticed blood on her underwear. She told her mother about the bleeding, but did not describe the incident with Appellant, again because she was afraid Appellant would get in trouble.

Dr. Nancy Kellogg, an abuse and neglect specialist, examined C.K. on May 12, 2005. C.K. told Dr. Kellogg about the incident with Appellant. Dr. Kellogg testified that C.K. was not yet sexually developed, and that the bleeding could not have been attributed to a menstrual cycle. Although C.K. showed no physical signs of the assault at the time Dr. Kellogg examined her, the doctor noted that more than two months had passed since the incident, and any injuries may have healed. Dr. Kellogg concluded that C.K. had been sexually abused based on the history of bleeding and C.K.'s description of the incident.

Appellant was charged with aggravated sexual assault and indecency with a child on June 28, 2006. A bench trial was held in the 289th Judicial District Court, Bexar County, with the Honorable Carmen Kelsey presiding. The court found the charges to be true and held disposition hearings on December 19, 2006, and January 4, 2007. At the conclusion of the hearings, the trial court sentenced Appellant to probation until his eighteenth birthday and released him to his father's custody.

In Issues One through Four, Appellant challenges the legal and factual sufficiency of the

evidence, arguing that the State failed to establish that Appellant committed the alleged offenses beyond a reasonable doubt. Specifically, Appellant asserts that C.K.'s history of behavioral issues, including hallucinations, caused her story to be so questionable as to be unbelievable. Furthermore, Appellant argues that C.K.'s tendency to react to various situations with anger further undermines her testimony. Moreover, Appellant argues the fact the alleged offenses were committed in a small house, but went unnoticed by the six people residing there raises further questions regarding C.K.'s allegations.

Although juvenile appeals are categorized as civil cases, when reviewing challenges to the sufficiency of the evidence supporting a finding that a juvenile engaged in delinquent conduct, appellate courts utilize the same standards applicable in criminal appeals. *See In the Matter of M.D.T.*, 153 S.W.3d 285, 287 (Tex.App.--El Paso 2004, no pet.). When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Burden v. State*, 55 S.W.3d 608, 612 (Tex.Crim.App. 2001). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the function of the trier of fact. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992). Instead, our duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *See Adelman*, 828 S.W.2d at 421-22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).

In a factual sufficiency review, we consider all the evidence in a neutral light. *Grotti v. State*, 273 S.W. 3d 273, 283 (Tex.Crim.App. 2008), *citing Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007). Evidence is factually insufficient if: (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the great weight and preponderance of contrary evidence, rendering the verdict clearly wrong and manifestly unjust. *Id*. A new trial will only be granted when the reviewing court determines, on an objective basis, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006).

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the sexual organ of a child younger than fourteen years of age to contact or penetrate the mouth, anus, or sexual organ of the actor, or another person, or causes the penetration of the mouth of a child by the sexual organ of the actor. *See* TEX.PEN.CODE ANN. § 22.021(a)(1)(B)(ii)(iii) & (2)(B)(Vernon Supp. 2009).

A person commits the offense of indecency with a child if, with a child younger than seventeen years and not the person's spouse, whether the child is of the same or opposite sex, the person engages in sexual contact with the child or causes the child to engage in sexual contact. *See* TEX.PEN.CODE ANN. § 21.11(a)(Vernon 2003). The penal code defines "sexual contact" in Section 21.11 as the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

> (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX.PEN.CODE ANN. § 21.11(c).

In Issues One and Two, Appellant contends that the evidence is legally insufficient to support the trial court's delinquency finding. Appellant's argument focuses on C.K.'s credibility given her history of behavioral problems, and evidence that the assault went unnoticed by several adults who were also present in the house at the time of the incident. In essence, Appellant argues that evidence of the surrounding circumstances, and the victim's behavioral history make her testimony completely incredible. Appellant implicitly admits that C.K.'s testimony is some evidence of the elements of the offenses charged. Therefore, to sustain Issues One and Two, this Court would have to engage in an evaluation of witness credibility and review the victim's testimony in a negative light. That would be contrary to the standard for a legal sufficiency review, and we decline to do so. *See Adelman* 828 S.W.2d at 421. It was within the purview of the fact finder to believe all, or any part of any witness's testimony, including C.K.'s. *See id.* Viewed in the light most favorable to the verdict, C.K.'s account of the assault, the evidence of her outcry to Ms. Cross, and Dr. Kellogg's testimony provide a rational basis for a trier of fact to conclude that Appellant committed the charged offenses. Issues One and Two are overruled.

In Issues Three and Four, Appellant argues that the evidence is factually insufficient to support the trial court's finding of delinquency because the evidence supporting the verdict is outweighed by the great weight and preponderance of contrary evidence, rendering the verdict clearly wrong and manifestly unjust.

Again, Appellant bases his argument on evidence of the circumstances surrounding the

assault and C.K.'s behavioral history. Regarding the physical surroundings at the time of the assault, Appellant points to testimony by C.K.'s mother and grandmother that the house where the assault occurred is small, 1,288 square feet. Ms. Armstrong testified that everything can be heard in the house at night because it is a wooden house on pier and beam. She also testified that she and her husband walk around the house at least twice during the night. In addition, there is evidence that eight people present at the house during the incident.

Furthermore, Appellant argues that C.K.'s problematic behavioral history calls her credibility into serious question. Evidence presented at trial demonstrated that C.K. has a history of kicking, spitting, and screaming when she becomes angry. C.K.'s school principal, Nancy Neugebauer, testified that during the 2005 school year, C.K. was restrained several times because of her anger reactions. The principal explained that occasionally it takes two people to hold C.K. down. C.K. has thrown books, tables, and chairs at people trying to restrain her. However, Ms. Neugebauer also testified that despite her behavior, when confronted, C.K. is ultimately a truthful child. Ms. Neugebauer also stated that in her opinion, C.K.'s mental issues make her more vulnerable to being a victim of sexual abuse.

During trial, C.K. admitted that along with her physical outbursts, she sometimes sees and hears things that are not there. Dr. Kellogg testified that at the time of the assault, C.K.'s medical records indicated she was being treated for depression, attention deficit disorder, and possibly schizophrenia. The doctor explained that C.K. indicated that she sometimes saw or heard things that were not real, but refused to provide more details. The doctor also explained that during their interview, C.K. was clear and consistent with her account of what happened, and although she seemed embarrassed to talk about the genital to genital contact, C.K. was ultimately

cooperative. Dr. Kellogg described C.K.'s demeanor as "consistent" with the events she was talking about. Dr. Kellogg diagnosed C.K. as having been sexually abused.

Appellant concludes that based on C.K.'s history and the presence of people in the house at the time of the assault, the trial court's findings were against the great weight and preponderance of the evidence. While the record does contain evidence contrary to the court's findings, it does not so clearly outweigh the evidence supporting the court's findings that the adjudication is manifestly unjust. A factual sufficiency review should be deferential to the fact finder's verdict. *Watson* 204 S.W.3d at 417. It was the fact finder's duty to determine credibility and give weight to testimony. *Id*. Therefore, the evidence supporting the verdict is not outweighed by the great weight and preponderance of contrary evidence, rendering the verdict clearly wrong and manifestly unjust. *See id*. As a result, having reviewed the evidence in a neutral light, the evidence is factually sufficient to support the court's findings. Issues Three and Four are overruled.

In Issue Five, Appellant asserts that the trial court erred in denying his pretrial motion, "Special Plea of Double Jeopardy and of Malicious Prosecution." Following C.K.'s outcry, the Armstrong children, including Appellant, were removed from their home by Child Protective Services (CPS). At Appellant's juvenile delinquency trial, Judge Peter Sakai, who presided over the CPS case, testified that the CPS case had been short-lived and was ultimately dismissed by non-suit. Wallace Tarver, attorney for Mr. Armstrong, Sr. in the CPS case, testified that Appellant and the rest of the children were removed from their home by CPS as part of CPS's protocol. Appellant was placed in a home for troubled male adolescents for five months until the CPS suit was dismissed. Cedric Payton, director of administration at the home, testified that

Appellant received weekly therapy during the five months he was there.

Appellant filed a pretrial motion of "Special Plea of Double Jeopardy and of Malicious Prosecution" and it was denied. Appellant contends that CPS's removal of Appellant from his home constituted punishment for the alleged charges. Appellant therefore argues that his constitutional right to be free from double jeopardy was infringed by this prosecution.

The Fifth Amendment states that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V; *see also Lopez v. State*, 108 S.W.3d 293, 295 (Tex.Crim.App. 2003). Because delinquency proceedings may result in deprivation of liberty, a juvenile is guaranteed the same constitutional rights as an adult in a criminal proceeding. *In the Matter of R.S.C.*, 940 S.W.2d 750, 751 (Tex.App.--El Paso 1997, no writ). The United States Supreme Court has held that a protection from the Fifth Amendment guarantee against double jeopardy consist of protection against multiple punishments for the same offense. *Lopez*, 108 S.W.3d at 295-96, *citing North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

"Jeopardy" generally refers to the risk traditionally associated with a criminal prosecution and is not present in proceedings that are not "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975). The double jeopardy clause does not bar both a remedial civil proceeding and a criminal prosecution based on the same conduct. *State v. Solar*, 906 S.W.2d 142, 146 (Tex.App.--Fort Worth 1995, pet. ref'd); *see also Malone v. State*, 864 S.W.2d 156, 159 (Tex.App.--Forth Worth 1993, no pet.)(holding that protecting abused and neglected children does not trigger jeopardy to bar subsequent criminal prosecution of father for aggravated sexual assault). "In certain 'rare cases,' a civil proceeding may be considered

punitive for double jeopardy purposes if the penalty 'cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either a retributive or deterrent purposes.'" *Ex Parte Cantu*, 913 S.W.2d 701, 705 (Tex.App.--San Antonio 1995, pet. ref'd), *quoting United States v. Halper*, 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). "To determine if a given civil sanction constitutes punishment, we assess the penalty imposed and the purposes served by it." *Cantu*, 913 S.W.2d at 705.

Appellant contends that CPS's removal of Appellant from his home after C.K.'s outcry constituted punishment that can only serve a retributive or deterrent purpose. We disagree. The goal or purpose of CPS's investigation in this instance was remedial in nature and it is related "to the State's interest in protecting abused and neglected children . . . ." *See Malone*, 864 S.W.2d at 159; *Ex Parte Cantu*, 913 S.W.2d at 706. Similarly, Appellant's removal from his home served the limited purpose of protecting the children of the house from abuse based on C.K.'s allegations. Therefore, CPS's action cannot be classified as punishment towards Appellant. Appellant fails to cite authority showing that CPS's removal actions constituted punishment or a penalty for purposes of double jeopardy, and we have been unable to locate Texas precedent so holding. Issue Five is overruled.

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

October 21, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J. (Not Participating)