COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS








IN THE MATTER OF R.A., A
JUVENILE

§


 


§


 


§


 


§


 


§


 


 § 

No. 08-07-00101-CV



Appeal from the


289th Judicial District


of Bexar County, Texas 


(TC# 2006-JUV-01730)


O P I N I O N


 This is an appeal from a conviction for aggravated sexual assault and indecency with a
child. Appellant argues on appeal that the evidence was legally and factually insufficient to
support the conviction. Appellant also argues that his constitutional right to be free from double
jeopardy was violated by the filing of the present case. We affirm.

 C.K., the ten-year-old complainant, lived with her grandmother Ellen Cross. In March
2005, she spent spring break at her mother Jennifer Armstrong's house along with
Ms. Armstrong's husband, Rodney Armstrong, and his five children. Appellant is C.K.'s 
fourteen-year-old stepbrother.

 Ms. Cross testified that in April 2005, C.K. made an outcry. C.K. told Ms. Cross that on
March 15, 2005, Appellant came into the livingroom where C.K. was sleeping and got on top of
her in the middle of the night. Appellant told C.K. he was going to give her a massage. He then
touched C.K.'s genital area under her shorts. He opened C.K.'s legs, spread them back, and
pulled her shorts to the side. C.K. testified that Appellant put his "middle part" in her "middle
part." At trial, C.K. demonstrated what a "middle part" was and demonstrated the motion
Appellant made during the incident. C.K.'s demonstration and explanations indicated that
Appellant had inserted his penis into her vagina during the assault. C.K. tried to escape but
Appellant held her down on the couch.

 After the assault, Appellant got a washrag and cleaned C.K.'s genital area. C.K. did not
yell during the attack because her mother had told her not to yell in the house, and C.K. feared 
getting her stepbrother in trouble. The next morning, C.K. noticed blood on her underwear. She
told her mother about the bleeding, but did not describe the incident with Appellant, again
because she was afraid Appellant would get in trouble.

 Dr. Nancy Kellogg, an abuse and neglect specialist, examined C.K. on May 12, 2005. 

C.K. told Dr. Kellogg about the incident with Appellant. Dr. Kellogg testified that C.K. was not
yet sexually developed, and that the bleeding could not have been attributed to a menstrual cycle. 
Although C.K. showed no physical signs of the assault at the time Dr. Kellogg examined her, the
doctor noted that more than two months had passed since the incident, and any injuries may have
healed. Dr. Kellogg concluded that C.K. had been sexually abused based on the history of
bleeding and C.K.'s description of the incident.

 Appellant was charged with aggravated sexual assault and indecency with a child on
June 28, 2006. A bench trial was held in the 289th Judicial District Court, Bexar County, with
the Honorable Carmen Kelsey presiding. The court found the charges to be true and held
disposition hearings on December 19, 2006, and January 4, 2007. At the conclusion of the
hearings, the trial court sentenced Appellant to probation until his eighteenth birthday and
released him to his father's custody.

 In Issues One through Four, Appellant challenges the legal and factual sufficiency of the
evidence, arguing that the State failed to establish that Appellant committed the alleged offenses
beyond a reasonable doubt. Specifically, Appellant asserts that C.K.'s history of behavioral
issues, including hallucinations, caused her story to be so questionable as to be unbelievable. 
Furthermore, Appellant argues that C.K.'s tendency to react to various situations with anger
further undermines her testimony. Moreover, Appellant argues the fact the alleged offenses were
committed in a small house, but went unnoticed by the six people residing there raises further
questions regarding C.K.'s allegations.

 Although juvenile appeals are categorized as civil cases, when reviewing challenges to
the sufficiency of the evidence supporting a finding that a juvenile engaged in delinquent
conduct, appellate courts utilize the same standards applicable in criminal appeals. See In the
Matter of M.D.T., 153 S.W.3d 285, 287 (Tex.App.--El Paso 2004, no pet.). When reviewing the
legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex.Crim.App. 2001). We do
not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses,
as this was the function of the trier of fact. See Adelman v. State, 828 S.W.2d 418, 421
(Tex.Crim.App. 1992). Instead, our duty is to determine whether both the explicit and implicit
findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict. See Adelman, 828 S.W.2d at 421-22. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991).

 In a factual sufficiency review, we consider all the evidence in a neutral light. Grotti v.
State, 273 S.W. 3d 273, 283 (Tex.Crim.App. 2008), citing Roberts v. State, 220 S.W.3d 521, 524
(Tex.Crim.App. 2007). Evidence is factually insufficient if: (1) the evidence supporting the
verdict is so weak that the verdict seems clearly wrong and manifestly unjust; or (2) the evidence
supporting the verdict is outweighed by the great weight and preponderance of contrary evidence,
rendering the verdict clearly wrong and manifestly unjust. Id. A new trial will only be granted
when the reviewing court determines, on an objective basis, that the great weight and
preponderance of the evidence contradicts the jury's verdict. Watson v. State, 204 S.W.3d 404, 
417 (Tex.Crim.App. 2006).

 A person commits the offense of aggravated sexual assault of a child if he intentionally or

 knowingly causes the sexual organ of a child younger than fourteen years of age to contact or
penetrate the mouth, anus, or sexual organ of the actor, or another person, or causes the
penetration of the mouth of a child by the sexual organ of the actor. See Tex.Pen.Code Ann.
§ 22.021(a)(1)(B)(ii)(iii) & (2)(B)(Vernon Supp. 2009).

 A person commits the offense of indecency with a child if, with a child younger than
seventeen years and not the person's spouse, whether the child is of the same or opposite sex, the
person engages in sexual contact with the child or causes the child to engage in sexual contact. 
See Tex.Pen.Code Ann. § 21.11(a)(Vernon 2003). The penal code defines "sexual contact" in
Section 21.11 as the following acts, if committed with the intent to arouse or gratify the sexual
desire of any person:

 (1) any touching by a person, including touching through clothing, of the anus,
breast, or any part of the genitals of a child; or


 (2) any touching of any part of the body of a child, including touching through
clothing, with the anus, breast, or any part of the genitals of a person.


Tex.Pen.Code Ann. § 21.11(c).


 In Issues One and Two, Appellant contends that the evidence is legally insufficient to
support the trial court's delinquency finding. Appellant's argument focuses on C.K.'s credibility
given her history of behavioral problems, and evidence that the assault went unnoticed by several
adults who were also present in the house at the time of the incident. In essence, Appellant
argues that evidence of the surrounding circumstances, and the victim's behavioral history make
her testimony completely incredible. Appellant implicitly admits that C.K.'s testimony is some
evidence of the elements of the offenses charged. Therefore, to sustain Issues One and Two, this
Court would have to engage in an evaluation of witness credibility and review the victim's
testimony in a negative light. That would be contrary to the standard for a legal sufficiency
review, and we decline to do so. See Adelman 828 S.W.2d at 421. It was within the purview of
the fact finder to believe all, or any part of any witness's testimony, including C.K.'s. See id. 
Viewed in the light most favorable to the verdict, C.K.'s account of the assault, the evidence of
her outcry to Ms. Cross, and Dr. Kellogg's testimony provide a rational basis for a trier of fact to
conclude that Appellant committed the charged offenses. Issues One and Two are overruled. 

 In Issues Three and Four, Appellant argues that the evidence is factually insufficient to
support the trial court's finding of delinquency because the evidence supporting the verdict is
outweighed by the great weight and preponderance of contrary evidence, rendering the verdict
clearly wrong and manifestly unjust.

 Again, Appellant bases his argument on evidence of the circumstances surrounding the
assault and C.K.'s behavioral history. Regarding the physical surroundings at the time of the
assault, Appellant points to testimony by C.K.'s mother and grandmother that the house where
the assault occurred is small, 1,288 square feet. Ms. Armstrong testified that everything can be
heard in the house at night because it is a wooden house on pier and beam. She also testified that
she and her husband walk around the house at least twice during the night. In addition, there is
evidence that eight people present at the house during the incident.

 Furthermore, Appellant argues that C.K.'s problematic behavioral history calls her
credibility into serious question. Evidence presented at trial demonstrated that C.K. has a history
of kicking, spitting, and screaming when she becomes angry. C.K.'s school principal, Nancy
Neugebauer, testified that during the 2005 school year, C.K. was restrained several times because
of her anger reactions. The principal explained that occasionally it takes two people to hold C.K.
down. C.K. has thrown books, tables, and chairs at people trying to restrain her. However,
Ms. Neugebauer also testified that despite her behavior, when confronted, C.K. is ultimately a
truthful child. Ms. Neugebauer also stated that in her opinion, C.K.'s mental issues make her
more vulnerable to being a victim of sexual abuse.

 During trial, C.K. admitted that along with her physical outbursts, she sometimes sees
and hears things that are not there. Dr. Kellogg testified that at the time of the assault, C.K.'s
medical records indicated she was being treated for depression, attention deficit disorder, and
possibly schizophrenia. The doctor explained that C.K. indicated that she sometimes saw or
heard things that were not real, but refused to provide more details. The doctor also explained
that during their interview, C.K. was clear and consistent with her account of what happened, and
although she seemed embarrassed to talk about the genital to genital contact, C.K. was ultimately
cooperative. Dr. Kellogg described C.K.'s demeanor as "consistent" with the events she was
talking about. Dr. Kellogg diagnosed C.K. as having been sexually abused.

 Appellant concludes that based on C.K.'s history and the presence of people in the house
at the time of the assault, the trial court's findings were against the great weight and
preponderance of the evidence. While the record does contain evidence contrary to the court's
findings, it does not so clearly outweigh the evidence supporting the court's findings that the
adjudication is manifestly unjust. A factual sufficiency review should be deferential to the fact
finder's verdict. Watson 204 S.W.3d at 417. It was the fact finder's duty to determine credibility
and give weight to testimony. Id. Therefore, the evidence supporting the verdict is not
outweighed by the great weight and preponderance of contrary evidence, rendering the verdict
clearly wrong and manifestly unjust. See id. As a result, having reviewed the evidence in a
neutral light, the evidence is factually sufficient to support the court's findings. Issues Three and
Four are overruled.

 In Issue Five, Appellant asserts that the trial court erred in denying his pretrial motion,
"Special Plea of Double Jeopardy and of Malicious Prosecution." Following C.K.'s outcry, the
Armstrong children, including Appellant, were removed from their home by Child Protective
Services (CPS). At Appellant's juvenile delinquency trial, Judge Peter Sakai, who presided over
the CPS case, testified that the CPS case had been short-lived and was ultimately dismissed by
non-suit. Wallace Tarver, attorney for Mr. Armstrong, Sr. in the CPS case, testified that
Appellant and the rest of the children were removed from their home by CPS as part of CPS's
protocol. Appellant was placed in a home for troubled male adolescents for five months until the
CPS suit was dismissed. Cedric Payton, director of administration at the home, testified that
Appellant received weekly therapy during the five months he was there.

 Appellant filed a pretrial motion of "Special Plea of Double Jeopardy and of Malicious
Prosecution" and it was denied. Appellant contends that CPS's removal of Appellant from his
home constituted punishment for the alleged charges. Appellant therefore argues that his
constitutional right to be free from double jeopardy was infringed by this prosecution. 

 The Fifth Amendment states that "[n]o person shall . . . be subject for the same offense to
be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V; see also Lopez v. State,
108 S.W.3d 293, 295 (Tex.Crim.App. 2003). Because delinquency proceedings may result in
deprivation of liberty, a juvenile is guaranteed the same constitutional rights as an adult in a
criminal proceeding. In the Matter of R.S.C., 940 S.W.2d 750, 751 (Tex.App.--El Paso 1997, no
writ). The United States Supreme Court has held that a protection from the Fifth Amendment
guarantee against double jeopardy consist of protection against multiple punishments for the
same offense. Lopez, 108 S.W.3d at 295-96, citing North Carolina v. Pearce, 395 U.S. 711, 717,
89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

 "Jeopardy" generally refers to the risk traditionally associated with a criminal prosecution
and is not present in proceedings that are not "essentially criminal." Breed v. Jones, 421 U.S.
519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975). The double jeopardy clause does not bar
both a remedial civil proceeding and a criminal prosecution based on the same conduct. State v.
Solar, 906 S.W.2d 142, 146 (Tex.App.--Fort Worth 1995, pet. ref'd); see also Malone v. State,
864 S.W.2d 156, 159 (Tex.App.--Forth Worth 1993, no pet.)(holding that protecting abused and
neglected children does not trigger jeopardy to bar subsequent criminal prosecution of father for
aggravated sexual assault). "In certain 'rare cases,' a civil proceeding may be considered
punitive for double jeopardy purposes if the penalty 'cannot fairly be said solely to serve a
remedial purpose, but rather can only be explained as also serving either a retributive or deterrent
purposes.'" Ex Parte Cantu, 913 S.W.2d 701, 705 (Tex.App.--San Antonio 1995, pet. ref'd),
quoting United States v. Halper, 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487
(1989). "To determine if a given civil sanction constitutes punishment, we assess the penalty
imposed and the purposes served by it." Cantu, 913 S.W.2d at 705.

 Appellant contends that CPS's removal of Appellant from his home after C.K.'s outcry
constituted punishment that can only serve a retributive or deterrent purpose. We disagree. The
goal or purpose of CPS's investigation in this instance was remedial in nature and it is related "to
the State's interest in protecting abused and neglected children . . . ." See Malone, 864 S.W.2d at
159; Ex Parte Cantu, 913 S.W.2d at 706. Similarly, Appellant's removal from his home served
the limited purpose of protecting the children of the house from abuse based on C.K.'s
allegations. Therefore, CPS's action cannot be classified as punishment towards Appellant. 
Appellant fails to cite authority showing that CPS's removal actions constituted punishment or a
penalty for purposes of double jeopardy, and we have been unable to locate Texas precedent so
holding. Issue Five is overruled.

 Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

October 21, 2009

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.

Carr, J. (Not Participating)