Arturo Arteaga **LOPEZ**, Appellant,

v.

The **STATE** of Texas.

No. 1080–02.

Court of Criminal Appeals of Texas.

June 11, 2003.

---

J.R. Molina, Fort Worth, for appellant.

Sharon A. Johnson, Assist. DA, Fort Worth, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, J.J., joined.

We are asked to decide whether a person's offer to sell three kilos of cocaine in the morning and his possession of cocaine with the intent to deliver it to complete that same sale in the evening constitutes one offense or two.[1] The court of appeals held that double jeopardy barred two separate convictions based upon the single sale of the single quantity of cocaine.[2] We agree and therefore affirm the court of appeals.

### I.

On the morning of October 14, 1997, appellant and Rose Maria Guzman contacted Gabe Barrera, an undercover narcotics officer for the Fort Worth Police Department. Barrera negotiated with them to buy three kilograms of cocaine. The sale was to be consummated at the Town Center Mall in Fort Worth. Barrera first met with Guzman around 12:30 p.m., and she told him that appellant was in Roma, Texas. She explained that he was having trouble getting the cocaine, but she reassured the officer that they had another supply source in Fort Worth. Barrera and Guzman arranged to complete the sale at the mall around 5:00 p.m. Appellant arrived a little after 5:00 p.m., and said that his source would be bringing the cocaine to Town Center. Appellant left, and then returned shortly after 6:30 p.m. with Guzman. They told Barrera that "the source of supply, Mr. Ledesma, was in fact in route and that he was going to bring one kilogram of cocaine" because "Mr. Ledesma wanted to conduct the transaction one kilogram at a time." Mr. Ledesma arrived around 7:30 p.m. Guzman then led Barrera to Ledesma's car, while appellant stood by his vehicle. When Barrera asked

1. We granted review on the following questions:
   1) What is the "allowable unit of prosecution" prescribed by § 481.112 of the Controlled Substances Act?
   2) Does the Double Jeopardy Clause bar the State from obtaining convictions for both delivery of a controlled substance (committed by offering to sell the substance) and possession of a controlled substance with the intent to deliver, when the offenses are committed pursuant to a continuing course of conduct?

2. *Lopez v. State*, 80 S.W.3d 624 (Tex.App.-Fort Worth 2002).

to see the cocaine, Ledesma showed him the package, Barrera cut it open, saw that it was white powder, and he then gave the arrest signal to other, waiting officers.

Appellant was indicted on two counts. Count one of the indictment charged that, on or about October 14, 1997, appellant did "then and there intentionally or knowingly deliver to G. Barrera a controlled substance, namely cocaine of four hundred grams or more, including any adulterants or dilutants, by offering to sell said controlled substance[.]" Count two alleged that, on or about October 14, 1997, appellant did "then and there intentionally or knowingly possess a controlled substance, namely: cocaine of four hundred grams or more, including any adulterants or dilutants, with intent to deliver said controlled substance[.]" The jury, based upon the law of parties, found appellant guilty on both counts and sentenced him to twenty-five years imprisonment on each count.

On appeal, appellant argued that his two convictions for one sale were one too many. The State countered that this was not a case of "multiple punishments for the same offense" because appellant had been found guilty of two different offenses: the first, the delivery by offer to sell, which occurred in the morning, and the second, possession with intent to deliver, which occurred when Mr. Ledesma arrived with the drugs to consummate that sale. The Court of Appeals treated the issue as a double jeopardy question and held that conviction and punishment on both counts—based on a single sale of cocaine—violated the Double Jeopardy Clause. It vacated appellant's conviction for possession of a controlled substance with intent to deliver but affirmed his conviction for delivery of a controlled substance.

The court of appeals relied on *Gongora v. State*,[3] in which the First Court of Appeals held that, when the defendant was prosecuted for delivery of *two* bricks of cocaine and later prosecuted for possession with intent to deliver *one* of the two bricks, the second prosecution violated double jeopardy. The State, in its petition for review, argues that this case is different from *Gongora* because in that case, each offense was supported by the same physical evidence, whereas here, the first offense, the offer to sell cocaine, was not supported by any physical evidence and did not need to be. The State contends that both convictions were appropriate in this case because the Legislature intended for each act, the delivery by the offer to sell and the possession with intent to deliver, to be a discrete allowable unit of prosecution under Section 481.112(a) of the Texas Health & Safety Code. Therefore, the State argues, conviction under both counts—though supported by acts committed pursuant to a continuing course of conduct—does not offend the Double Jeopardy Clause.

## II.

The Fifth Amendment provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." In *North Carolina v. Pearce*,[4] the Supreme Court stated that the Fifth Amendment guarantee against double jeopardy consists of three separate constitutional protections: first, it protects against a second prosecution for the same offense after acquittal; second, it protects against a second prosecution for the same offense after conviction; and third, it protects against multiple punishments for the

---

**3.** 916 S.W.2d 570 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd).

**4.** 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

same offense.[5]

The present situation invokes the third prong or "multiple punishments" aspect of double jeopardy analysis. In *Blockburger v. United States*,[6] the Supreme Court addressed the propriety of "multiple punishments" assessed against a defendant, in a single proceeding, for his multiple violations of the same narcotics statute by different acts committed on different days.[7] The Court set out the double jeopardy test for "sameness" in these circumstances: "[t]he test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty."[8] Under *Blockburger*, "this test hinges on the legislative intent of the statute at issue."[9]

The test in the present case therefore, is: did the Legislature intend that individual steps taken toward a single sale of a single quantity of a controlled substance constitute one violation of Section 481.112(a),[10] or did the Legislature intend that each step taken toward that single sale itself constitutes a different violation of the statute, so that there would be potentially as many different offenses as there are steps taken? For example, suppose Dan walks up to Joe, offers to sell him a rock of cocaine, then holds the rock in his outstretched hand, and finally puts the rock into Joe's palm. Did the Legislature intend that sequence of events to be punished as one offense or three distinct offenses under Section 481.112(a)?[11]

In *Blockburger*, the Supreme Court held that each distinct sale of a discrete quanti-

---

5. *Id.* at 717, 89 S.Ct. 2072; *see also Ex parte Lange*, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873). In *Lange*, the Supreme Court stated that:

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And ... there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

*Id.* at 168. Thus, "the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Id.* at 173.

6. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

7. In *Blockburger*, the defendant was found guilty of two sales on different days of different discrete quantities of the same drug, morphine, to the same purchaser. 284 U.S. at 301, 52 S.Ct. 180. He was also charged, in connection with the last sale, with selling the morphine to a buyer who did not have a valid "written order." *Id.* The Supreme Court upheld the two counts for the two separate sales because they were each a "separate and distinct sale completed by its delivery." *Id.* The

Court stated that "each of several successive sales constitutes a distinct offence, however closely they may follow each other." *Id.* at 302, 52 S.Ct. 180.

8. *Id.* (quoting WHARTON'S CRIMINAL LAW § 34 n. 3 (11th ed)); *see also Manrique v. State*, 994 S.W.2d 640, 646 (Tex.Crim.App.1999) (McCormick, P.J., concurring) (quoting *Blockburger*).

9. *Manrique*, 994 S.W.2d at 646.

10. TEX. HEALTH & SAFETY CODE § 481.112(a) read, at the time of this offense:

> Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1.

Cocaine is a Penalty Group 1 controlled substance. *See id.* § 481.102 (listing Penalty Group 1 substances).

11. It is worth pointing out that the question whether a single quantum of drugs—manufactured and then delivered by the same defendant—is one or two (or more) offenses is not before us. Thus we express no opinion on that issue.

ty of the same drug to the same purchaser on different occasions constituted a distinct offense, because "the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one—that is to say, of a new bargain." [12] Each sale involved a separate quantity of drugs and each sale was a separate *quid pro quo* transaction.

The State's position in this case is that, under the Texas Controlled Substances Act, each part of each of those two sales in *Blockburger*—the negotiation of the sale, the possession with intent to deliver, and the actual delivery—is itself a separate "impulse" that the Texas Legislature intended to punish. Thus a defendant's sale of one baggie of cocaine could be subdivided into three separate offenses: his offer to sell, his possession of the drugs with the intent to deliver them, and the actual consummated delivery. Under this construction, appellant's offer to sell cocaine to Barrera in the morning, before he had the cocaine in hand, was one offense, while his possession of the cocaine with intent to deliver, which occurred once Ledesma arrived with the drugs, was another. The State's reading of this statute and of the Legislature's intent is overly literal, and does not comport with common sense, our cases, the courts of appeals' cases interpreting it.

### III.

Under Texas Health & Safety Code Section 481.112(a), a person commits the offense of manufacture or delivery of cocaine if he "knowingly manufactures, delivers, or possesses with intent to deliver" it. Under Section 481.002(8), the word " 'deliver' means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship." Furthermore, "[t]he term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia." Under Section 481.002(9), "delivery" or "drug transaction" means the act of delivering.

Thus, there are at least five ways to commit an offense under Section 481.112: through knowing 1) manufacture; 2) an offer to sell; or 3) possession with intent to deliver; or through knowing delivery by 4) actual transfer; or 5) constructive transfer.[13] All of these methods are points along a continuum in the line of drug distribution, from its original manufacture until its physical delivery to the ultimate consumer. Thus, no matter where the actor and his individual baggie, brick, or rock of cocaine is apprehended along that continuum, the actor may be prosecuted under Section 481.112.

The State's argument suggests that the Legislature could have intended multiple prosecutions for the same drug sale because Section 481.132 provides that a defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode.[14] As we

---

**12.** *Blockburger,* 284 U.S. at 303, 52 S.Ct. 180.

**13.** *See Marable v. State,* 85 S.W.3d 287, 295 (Tex.Crim.App.2002)(Womack, J., dissenting) (under statute providing a person commits the offense of delivery of controlled substance if he knowingly or intentionally delivered or possessed with intent to deliver a controlled substance "[t]here were ... at least four ways to intentionally or knowingly commit such an offense: by actual transfer, by constructive transfer, by possession with intent to deliver, and by offer to sell.")

**14.** A "criminal episode" is defined as two or more offenses: 1) committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme, plan, or continuing course of conduct; or 2) which are the repeated commission of the same or similar

stated in *Watson v. State*,[15] the joinder statute allows for the efficient disposition of cases and also provides a benefit for the accused because, if he is found guilty of more than one offense, any sentences imposed must run concurrently.[16] In *Watson*, for example, the defendant was found with a plastic bag containing capsules of both heroin and cocaine; "both of the charged offenses arose out of the same 'criminal episode' as defined in § 481.132(a) of the Texas Health and Safety Code," and "joinder of the two offenses in a single indictment was proper under Texas Health and Safety Code § 481.132(b)."[17] In this case, for example, had appellant offered to sell Officer Barrera one kilo of heroin and two kilos of cocaine (or had he been arrested with both of them in his possession, ready to deliver), appellant could have been convicted for both of those distinct offenses—delivery of heroin and delivery of cocaine. But he could not be convicted of four delivery

offenses: the offer to sell both the heroin and the cocaine in the morning and the possession with intent to deliver each in the evening.

Courts of appeals have also recognized that two delivery offenses may be joined under Section 481.132(b) when, for instance, there are two separate quantities of the same drug involved, as there were in *Blockburger* itself. For example, in *Smith v. State*,[18] the Second Court of Appeals held that when the defendant delivered a quantity of cocaine to an undercover officer, and then, while being arrested for that delivery, threw down an *additional quantity* of cocaine that he had on him, he could be convicted of two offenses under the Controlled Substances Act.[19] He delivered baggie A to the buyer and he still possessed (perhaps with an intent to deliver to another buyer) baggie B.[20] In the present case, for example, police searched appellant's residence after his arrest and found an additional 1.98 grams of

offenses. Tex. Health & Safety Code § 481.132(a).

**15.** 900 S.W.2d 60 (Tex.Crim.App.1995).

**16.** *Id.* at 63.

**17.** *Id.* at 62. *See, e.g., Nichols v. State*, 52 S.W.3d 501 (Tex.App.-Dallas 2001, no pet.)(rejecting, based on *Watson*, the State's contention that because cocaine and methamphetamine are in the same penalty group, possession of cocaine and possession of methamphetamine constitute the same statutory offense; holding, therefore, that the indictment which originally charged defendant with possession of cocaine could not be amended to charge possession of methamphetamine over his objection).

**18.** 873 S.W.2d 773 (Tex.App.-Fort Worth 1994, no pet.).

**19.** *Id.* at 775. "Under *Blockburger*, these events must be characterized as two separate offenses, since each requires proof of a fact

not required by the other offense. In addition, separate quantities of cocaine were involved in each offense." The court of appeals also noted that "if Smith had sold all of the cocaine he possessed to Officer Franklin, he would have been guilty of only one offense." *Id. See also Ex parte Tomlinson*, 886 S.W.2d 544, 546–47 (Tex.App.-Austin 1994, no pet.)("Double Jeopardy does not bar prosecution for distinct possession and delivery offenses where separate drug quantities are identified for each offense")(citing *Smith, supra*).

**20.** *See Toro v. State*, 780 S.W.2d 510, 511–12 (Tex.App.-San Antonio 1989, no pet.) (conviction of both possession of cocaine and delivery of cocaine did not offend the double jeopardy clause; "[e]ven if there were one transaction, the offense of delivery of cocaine to [the undercover officer] was complete when the delivery was made. The arrest for the offense of possession of a *different* package of cocaine occurred after that time. [The undercover officer] was not involved in that arrest") (emphasis added).

cocaine,[21] but appellant apparently was not charged with this offense.

Underlying these cases is the common-sense notion that the gravamen of the offense of delivery is driven by the particular quantity of a particular contraband substance. A recent case from the First Court of Appeals, *Rodriguez v. State*,[22] illustrates the point well. The facts in that case were similar to those here:

> On January 2, 2001, undercover Houston Police Officer Villareal and his informant went to a body shop owned by appellant to attempt to purchase 40 pounds of marihuana. Appellant told Villareal that he did not have the marihuana on site, but could get it in 30 minutes. Appellant instructed an employee, Manuel Garcia, to give Villareal a sample of marihuana and then told Villareal that appellant would call him on his cell phone when the marihuana arrived. Villareal and his informant then left the shop.
>
> After three hours had passed, appellant phoned and told Villareal that, although appellant was leaving the shop, Garcia would call Villareal when the marihuana arrived. When Garcia called to tell Villareal that the marihuana had arrived, Villareal and his informant returned to the shop for the purchase. After Garcia displayed and weighed the marihuana, Villareal gave the "bust" signal, and Garcia was arrested. Because appellant was not at the shop during the arrests, he was arrested at his house on January 17, 2001.[23]

Rodriguez was prosecuted for delivery of the marijuana. The jury charge authorized conviction if the jurors found that Rodriguez delivered marijuana by actually transferring, constructively transferring, or offering to sell marijuana to Villareal. Rodriguez argued that the jury charge improperly joined two separate offenses—the first a delivery based on his offer to sell the marijuana to Villareal, and the second the constructive delivery based on his employee's act of handing over that marijuana-creating the potential for a non-unanimous verdict. Rodriguez complained that some jurors could have found him guilty only of the offer to sell (one offense), while other jurors could have found him guilty only of the delivery (a second offense).[24] But the court of appeals concluded that there was no potential for a non-unanimous verdict because only one offense had been committed:

> appellant arranged a single delivery and single sale of marihuana to Villareal. Although the delivery took three hours to complete, the lapse of time does not transform a single offense into two. *The delivery here completed appellant's offer to sell and was thus the end result of a single drug transaction.*[25]

The result was a permissible general verdict because the defendant was charged with two alternative theories of committing the same offense, and not two separate deliveries.[26] We agree with the reasoning in *Rodriguez*: when a delivery of a controlled substance completes an offer to sell that same substance there is but one offense, for which only one punishment may be imposed.

Section 481.112 provides several different means for committing the offense of

21. *Lopez*, 80 S.W.3d at 627.

22. 89 S.W.3d 699 (Tex.App.-Houston [1st Dist.] 2002, pet ref'd).

23. *Id.* at 700.

24. *Id.* at 700–01.

25. *Id.* at 701 (emphasis added).

26. *Id.* at 702.

delivery of a single quantity of drugs so that, no matter where along the line of actual delivery—from the offer to sell, to the possession of the drugs with the intent to deliver them, to the actual delivery itself—the drug dealer may be held accountable for the gravamen of the offense—the distribution of dangerous drugs in our society. The Legislature has thus ensured that society's hands are not tied in prosecuting what is, for all intents and purposes, a delivery, merely because the drugs did not actually make it all the way into the buyer's hands. Under Section 481.112, the fact that a transfer is thwarted will not negate conviction for delivery of that drug. Similarly, if an actor possesses a quantity of drugs sufficient to permit the jury to conclude that he possessed them with the intent to distribute them, the statute does not require any existing offer to sell or prospective buyer before he may be held liable under Section 481.112.

The statute, however, cannot be turned on its head to allow several "delivery" convictions where there is only one single sale of one drug.[27] Therefore, we hold that the offer to sell and the possession of drugs to complete that specific sale is one single offense. Although the State may charge the offense as being committed in either of these modes, it cannot obtain two convictions for the same sale under Section 481.112(a).[28] The entry of two convictions

---

**27.** The State cites *Stewart v. State*, 718 S.W.2d 286 (Tex.Crim.App.1986), for the proposition that an individual need not deliver any controlled substance at all to be found guilty of the offense of delivery of a controlled substance by offer to sell. In *Stewart*, a 5–4 decision, this Court upheld a drug delivery conviction based on a bare offer to sell a nonexistent hundred dollar bag of heroin. There was a bag with a brown powdery substance in it, but at the time of the offer, the Legislature had not yet enacted statutes that cover "simulated controlled substances." In that case, this Court rejected the defendant's argument that the intervening enactment of such a statute demonstrated that the Legislature never intended that the Controlled Substances Act cover the delivery of bogus contraband. We stated:

> when delivery is by actual or constructive transfer the substance must be proved, usually by its chemical properties, to be a controlled substance. However, when delivery is by offer to sell no transfer need take place. A defendant need not even have any controlled substance. All he need do, as appellant did, is state that he had a hundred dollar bag of heroin he would sell to the officers.

*Id.* at 288. Although, under *Stewart*, the State did not need to produce any physical evidence of contraband to convict the defendant for the "offer to sell" offense, that holding certainly does not imply that if the evidence shows that the defendant *did* produce evidence of contraband to consummate the sale, he could then be convicted of a second delivery offense for the same sale.

**28.** The State's analogy to *Vick v. State*, 991 S.W.2d 830 (Tex.Crim.App.1999), is inapt. An actor can be prosecuted for separate violations of Tex. Penal Code § 22.021 based on different acts which occur in the same transaction because each act is a separate violation of the child. As we stated in *Vick:*

> Article 22.021 is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types.... Section (I) prohibits penetration of a male or female child's anus or the sexual organ of a female child. The focus is on penetration of the child's genital area. Somewhat related is section (ii), which prohibits penetration of the child's mouth by the defendant's sexual organ. Both section (I) and section (ii) concern penetration of the child, one focusing on the genital area, and the other on the mouth. In contrast, sections (iii) and (iv) address penetration and contact of another in a sexual fashion, by the sexual organ or anus of the child. The statute criminalizes many types of sexually assaultive conduct with a child. Yet, each section usually entails different and separate acts to commit the various, prohibited conduct. This specificity reflects the Legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct. An offense is complete when a person commits any one of the proscribed acts.

in this case violates double jeopardy under the *Blockburger* test because the steps in this single drug transaction were all "the result of the original impulse," and therefore each step was not a "new bargain."[29]

Our holding also comports with those of federal courts construing the analogous federal controlled substance statute. The federal law, like the Texas act, permits prosecution for a drug delivery committed in different ways: actual delivery, constructive delivery, and possession with intent to deliver.[30] A majority of federal circuits have taken the view that a defendant cannot be punished for two offenses under the analogous federal statute unless the violations arise out of two separate sales or transactions.[31] For example, in *United States v. McDonald*,[32] the Fifth Circuit held that when the defendant offered to sell crack cocaine to an undercover officer, negotiated the sale, and then returned with the crack cocaine and delivered it to the officer, the defendant had committed one drug delivery offense, not

*Id.* at 832–33. In contrast, delivery under TEX. HEALTH & SAFETY CODE § 481.112, is possession oriented rather than conduct or result oriented. Possessing baggie A of cocaine on Monday is not a separate offense from continuing to possess that same baggie of cocaine on Tuesday or Wednesday. And offering to sell Officer Barrera baggie A of cocaine is not a separate and distinct offense from possessing that same baggie with the intent to sell it to him or from the act of actually handing it to him. All of these are merely steps along the way of one single transfer of the baggie.

**29.** *Blockburger*, 284 U.S. at 303, 52 S.Ct. 180.

**30.** 21 U.S.C. § 841(a) provides that "[e]xcept as authorized by this title, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." Under 21 U.S.C. § 802(8) and (11), the terms "deliver" or "delivery" mean actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship, and the term "distribute" means to deliver. At least some federal cases suggests that a bona fide offer to sell constitutes a violation of 21 U.S.C. § 841(a). *See United States v. Mandujano*, 499 F.2d 370 (5th Cir.1974)(holding acts that consisted of offer to sell heroin at set price, and attempt to secure given amount of heroin in order to make sale and payment of money pursuant to "sale" were sufficient to constitute violation of 21 U.S.C. § 841); *United States v. Wigley*, 627 F.2d 224 (10th Cir.1980)(holding activities in furtherance of ultimate sale of drugs, such as vouching for quality of drugs, *negotiating for or receiving price*, and supplying or delivering drugs, are sufficient to establish distribution under 21 U.S.C. § 841).

**31.** *See United States v. Gore*, 154 F.3d 34, 43 (2d Cir.1998) (joining circuits which have "uniformly decided that convicting a defendant for distribution of a controlled substance and possession with intent to distribute that substance arising from the same single transaction with no other evidence of a separate possession constitutes double punishment unintended by Congress") (citing *United States v. Rodriguez–Cardona*, 924 F.2d 1148, 1159 (1st Cir.1991); *United States v. Carcaise*, 763 F.2d 1328, 1333 (11th Cir.1985); *United States v. Gomez*, 593 F.2d 210, 213 (3d Cir. 1979) (en banc); *United States v. Hernandez*, 591 F.2d 1019, 1021–22 (5th Cir.1979) (en banc); *United States v. Oropeza*, 564 F.2d 316, 323–24 (9th Cir.1977); *United States v. Olivas*, 558 F.2d 1366, 1368 (10th Cir.1977); *United States v. Stevens*, 521 F.2d 334, 336–37 (6th Cir.1975); *United States v. Curry*, 512 F.2d 1299, 1305 (4th Cir.1975)).

In *United States v. Mendoza*, 902 F.2d 693 (8th Cir.1990), the court pointed out that some circuits have concluded that defendants charged with two or more offenses under § 841(a)(1) are shielded only from receiving multiple sentences, not multiple convictions. *Id.* at 697. But, as the court pointed out in *Mendoza*, the rationale of this position—that a conviction by itself is not prejudicial-was rejected by the Supreme Court in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). *Id.* at 697–98.

**32.** 242 F.3d 275 (5th Cir.2001).

two.[33]

In sum, we agree with the court of appeals in its conclusion that "it was a violation of double jeopardy prohibitions to punish Appellant for both delivery [by the offer to sell] and possession with intent to deliver the same quantity of cocaine."[34] We therefore affirm the decision of the court of appeals.

KELLER, P.J., filed a concurring opinion in which KEASLER and HERVEY, J.J., joined.

KELLER, P.J., filed a concurring opinion in which KEASLER and HERVEY, J.J., joined.

I agree that appellant's conduct constitutes only one offense, but I do not agree with the Court's analysis of § 481.112. The Court says that under the statute there is a continuum from manufacture to delivery.[1] I do not understand the statute to describe such a continuum. I believe instead that manufacture and delivery are simply two separate offenses, each of which includes possession with intent to do the specified act (manufacture or delivery, as the case may be). Although the Court explicitly declines to address whether the manufacture and subsequent delivery of a quantity of drugs by a defendant is one offense or two, I think that if the statute does indeed describe a continuum, then the answer would necessarily be "one offense." That is the wrong answer.

In the multiple punishments double jeopardy arena, legislative intent is the key.[2] The question is whether the defendant was convicted of more offenses than the Legislature intended.[3] In conducting this inquiry, we should examine the structure and language of the statute in question.[4] We conducted just such an inquiry in Vick, which addressed the sexual assault statute.[5] We found that the criminalization of specific conduct and the separation of each type of conduct by the word "or" indicated that the Legislature intended each separately described type of conduct to constitute a separate offense.[6]

The statute before us shares some similarities to the one analyzed in Vick. The statute provides in relevant part: "a person commits an offense if the person knowingly or intentionally *manufactures, delivers,* or possesses with intent to *manufacture* or *deliver* a controlled substance in Penalty Group 1."[7] The title of the statute is "Offense: Manufacture or Delivery of Substance in Penalty Group 1." The drug statute criminalizes specific behavior: manufacture and delivery. And these terms are listed disjunctively in both the body of the statute and its title. It could also be argued that possession is a specifically criminalized behavior in the body of the statute, but the phrase "possession

33.  *Id.* at 276.

34.  80 S.W.3d at 628.

1.  *See* Court's opinion at 297.

2.  *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Ervin v. State,* 991 S.W.2d 804, 807 (Tex.Crim.App. 1999).

3.  *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *Ervin,* 991 S.W.2d at 807.

4.  *See Vick v. State,* 991 S.W.2d 830, 832–833 (Tex.Crim.App.1999).

5.  *Id.*

6.  *Id.*

7.  Texas Health & Safety Code § 481.112(a)(emphasis added).

with intent" relates back to manufacture and delivery-indicating that, here, possession is ancillary to the other two. This conclusion is buttressed by the title, which includes the terms "manufacture" and "delivery," but does not include "possession."[8]

This interpretation of the statute avoids at least one conceptual difficulty: if a person manufactures a quantity of a drug and then splits it up and delivers it to ten different people, what can he be charged with? Each delivery constitutes a separate offense, so that there are ten delivery offenses. But if manufacture and delivery are parts of one continuum, then the manufacture offense disappears. That is, the State could pursue one charge of manufacturing or ten charges of delivery, but not both. Given the structure of the statute, the better answer is that "manufacture" and "delivery" are separately criminalized.

The court's "continuum" approach is also undercut by the actual wording of the "possession" language found in the statute. One can possess with intent to *manufacture* as well as possess with intent to *deliver*. A continuum that begins with manufacturing does not square with this language, which criminalizes conduct that occurs before manufacture. Rather, the statute appears to create two different offenses: manufacture and delivery. The Court's continuum discussion mixes the definition of "deliver" with the elements of the offense found in § 481.112. "Actual transfer," "constructive transfer," and "offer to sell" are alternate methods by which one may deliver a controlled substance,[9] and as such, can be plugged in to statutes that use the word "deliver," but that fact does not change the way § 481.112 is structured, with its emphasis

on manufacture and delivery as the criminalized elements, and possession with intent as ancillary to those elements.

This interpretation also recognizes that the Legislature may have good reason to criminalize both the manufacture and the delivery of a controlled substance. The Legislature could rationally believe that the act of creating the contraband is itself dangerous apart from any delivery of that contraband. By also including a clause proscribing possession with intent to manufacture or deliver, the Legislature made evident its intent that equal punishment should be imposed against those who are stopped by law enforcement from reaching their objective, whether it is the manufacture or the delivery of the illegal drug. The Court's "continuum" interpretation, on the other hand, inaccurately reflects the structure of the statute and leads to a conclusion that manufacture and delivery of a single quantity of drugs is a single offense—a conclusion that I believe is not in keeping with the intent of the Legislature or the structure and title of the statute.

In the present case, the State sought to punish appellant separately for (1) a delivery (*via* offer to sell) and (2) a possession with intent to deliver (the intended sale that was prevented by law enforcement officials). Because both of these are "delivery" offenses under § 481.112, and they involve the same intended sale, they are the same offense for double jeopardy purposes.

I concur in the court's judgment.

---

8. For this reason, the Court's discussion of *Vick* is inapt. § 481.112 is not about possession. It is about manufacture and delivery, with possession being ancillary to those two.

9. § 481.002(8).