

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1661/1662-08

**EDUARDO GUERRERO, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

COCHRAN, J., filed a concurring opinion, in which WOMACK, J., joined.

### OPINION

I concur in the Court's judgment, but I respectfully disagree that a person may be punished for both manufacturing and possessing with intent to deliver the same single cache of methamphetamine at one specific time. I think that federal and Texas double-jeopardy principles prohibit two convictions for simultaneously manufacturing and possessing with the intent to deliver the same container of controlled substance. But I also agree that, given the particular circumstances of this case, appellant may be punished both for manufacturing

methamphetamine and for possessing methamphetamine with intent to deliver it because the police found three separate bottles–in different stages of the manufacturing process–two of which contained more than four grams of methamphetamine.    Thus, appellant's manufacturing one bottle of methamphetamine was a different act than his possessing the second bottle with intent to distribute its contents.  Two distinct acts equal two violations of section 481.112 of the Texas Health and Safety Code, but one act (simultaneous manufacture and possession with intent to deliver) evidenced by one bottle seized at one time equals only one violation of that section.

## I.

Appellant operated a methamphetamine lab at his home in the San Antonio suburb of Converse.  An anonymous caller tipped off police about the lab.  When appellant opened his front door for the investigating officers, they immediately smelled the "overwhelming" chemical odor associated with a meth lab.  The odor "burned" their lungs and noses.  They arrested appellant, who told them that a meth "burner" was still operating inside.  The fire department responders had to turn off the outside main power switch because the house was so cluttered with drug paraphernalia, meth cooking supplies, and detritus that they were unable to find the power strip for the hot plate in appellant's bedroom that was still bubbling its meth brew.

DEA agents and Converse police, wearing hazmat suits, "broke down" the meth lab and carted off over fifty different items relating to the methamphetamine-manufacturing

operation. Three of those items were glass or plastic jars containing methamphetamine:

- A large glass container filled with a two-layered substance. The top, liquid layer contained methamphetamine and weighed 74.62 grams; the bottom layer was more of a "sledge"– the "junky, oil-based" substance that "sets at the bottom of meth when it separates" and then "goes into the trash pile."

- A Dr. Pepper plastic bottle containing a two-layered liquid substance. The bottom layer contained methamphetamine and weighed 4.49 grams.

- A glass container with a purplish-colored two-layered liquid. The bottom layer contained 1.34 grams of methamphetamine.

Appellant was charged with and convicted of (1) manufacturing methamphetamine; (2) possession with intent to deliver methamphetamine; and (3) possession of methamphetamine. Although the police gathered up and packaged each of the three containers separately, the content of each container was analyzed and weighed separately, and the DPS chemist discussed each container separately, the State treated the three distinct containers as one undifferentiated cache of methamphetamine at trial. Nonetheless, appellant failed to raise any double-jeopardy claim during trial, thus it was his burden on appeal to prove that the undisputed facts "show the double jeopardy violation is clearly apparent on the face of the record[.]"[1] Appellate courts are not bound by prosecutorial theories when

---

[1] *Gonzalez v. State,* 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) ("[B]ecause of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal . . . when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests."). Raising the double-jeopardy issue in the trial court is important insofar as it is necessary to make a clear record on which to base an appellate claim. *See id.* at 645-46.

deciding whether the trial record clearly establishes a double-jeopardy violation.

## II.

The Double Jeopardy Clauses of both the United States and Texas Constitutions prohibit the state from punishing a person twice for the same offense.[2]  This protection specifically includes a guarantee that the accused will not be subject to multiple punishments assessed in the same criminal trial for the same statutory offense.[3]  As this court has previously stated, in *Blockburger v. United States*, the Supreme Court addressed the propriety of "multiple punishments" assessed against a defendant, in a single proceeding, for his multiple violations of the same narcotics statute by different acts committed on different days.[4]  That court set out the double-jeopardy test for "sameness" in these circumstances: "the test is whether the individual acts are prohibited, or the course of action which they constitute.  If the former, then each act is punishable separately. . . . If the latter, there can be but one penalty."[5]  Under *Blockburger*, "this test hinges on the legislative intent of the statute

---

[2] U.S. CONST. amend. V; TEX. CONST. art. 1, § 14; *see Ex parte Lange*, 85 U.S. 163, 168 (1873) ("If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence.  And … there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence."); *Lopez v. State*, 108 S.W.3d 293, 296 (Tex. Crim. App. 2003).

[3] *Id.*

[4] *Lopez*, 108 S.W.3d at 296 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).

[5] *Blockburger*, 284 U.S. at 302; *see also Manrique v. State*, 994 S.W.2d 640, 646 (Tex. Crim. App. 1999) (McCormick, P.J., concurring) (quoting *Blockburger)*.

at issue."[6]

The test in the present case is similar to that set out in our prior *Lopez*[7] case:  did the Legislature intend that manufacturing a single large bottle of methamphetamine and simultaneously possessing that bottle with an intent to deliver it to someone else constitute one violation of Section 481.112(a),[8] or did the Legislature intend that those who manufacture a large bottle of methamphetamine and simultaneously possess it with the intent to deliver it commit two different and distinct offenses at the same time?  Of course, those who manufacture drugs almost always possess them at the same time, so the real issue is whether the legislature intended to subject those who manufacture drugs to two punishments for the same act at the same time: manufacture plus possession for small quantities and manufacture plus possession with intent to deliver for large quantities?

We must look first to the plain language of the statute in determining the legislative intent.[9]  First, the title of the statute reads, "Offense: Manufacture or Delivery of Substance in Penalty Group 1."  This title indicates that *either* the manufacture *or* the delivery of a

---

[6] *Manrique*, 994 S.W.2d at 646.

[7] *See Lopez*, 108 S.W.3d at 296.

[8] TEX HEALTH & SAFETY CODE § 481.112(a) reads,
Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1.
Methamphetamine is a Penalty Group 1 controlled substance. *See id.* § 481.102 (listing Penalty Group 1 substances).

[9] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

substance in penalty group 1 constitutes the offense.  As we stated in *Lopez*, the statute is aimed at drug traffickers and drug distribution, no matter where the defendant is stopped along the line from manufacture, to possession with intent to deliver, to actual delivery of those drugs to the consumer.[10]  The penalty is the same no matter where along the continuum the defendant is stopped.  But the penalty increases depending upon the quantity of the drugs manufactured, delivered, or possessed with the intent to the deliver.[11]  So the legislature's focus seems to be upon the amount of the drugs involved, not upon any distinction between whether they were manufactured, delivered, or possessed with the intent to deliver.  This would indicate that the  legislative intent was to treat the proscribed behavior as alternative means of committing a single offense with ever-increasing penalties–regardless of the specific act involved–for ever-greater amounts of the specified drug.  In sum, the focus of section 481.112 indicates a legislative intent to punish a single act with a single punishment.  This conclusion also accords with our "liberalized *Blockburger* standard" as set out in *Ex parte Ervin*.[12]  Thus,  double jeopardy would prohibit multiple punishments for a single act

---

[10] *Lopez*, 108 S.W.3d at 299-300 ("Section 481.112 provides several different means for committing the offense of delivery of a single quantity of drugs so that, no matter where along the line of actual delivery–from the offer to sell, to the possession of the drugs with the intent to deliver them, to the actual delivery itself–the drug dealer may be held accountable for the gravamen of the offense–the distribution of dangerous drugs in our society.").

[11] T EX. HEALTH & SAFETY CODE § 481.112(b)-(f).

[12] *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).  In *Ervin*, we held that a person who commits the separate statutory offenses of intoxication manslaughter and manslaughter has committed the "same" offense for double-jeopardy purposes and can be punished only once for one death caused by that act.  991 S.W.2d at 817 ("[W]e conclude that manslaughter and intoxication manslaughter are the same offenses for double-jeopardy purposes

of manufacturing or possessing with intent to deliver methamphetamine at a single point in time.[13]

Several other states that have considered the same question have reached the same conclusion: the simultaneous act of manufacturing and possessing (with or without the intent to deliver) the same quantum of controlled substance is a single offense, not multiple offenses, for double-jeopardy purposes.[14]    That is because "possession is a natural

---

when they involve the same victim, and imposing convictions for both in this situation violates the Double Jeopardy Clause."). Of course, if more than one person died as a result of the defendant's single act, then the defendant could be convicted of two manslaughter (or intoxication manslaughter) offenses because both offenses "have a common focus: the death of an individual." *Id.* at 816; *see also Ex parte Rathmell*, 717 S.W.2d 33, 36 (Tex. Crim. App. 1986) (when a single act resulted in two deaths, defendant could be convicted of two involuntary manslaughter offenses).

[13] The Supreme Court held, in *Blockburger,* that distinct and separate deliveries of the same type of drug on different days constituted separate offenses, so the distinct acts of manufacturing methamphetamine on Monday while simultaneously possessing methamphetamine that had been manufactured on Sunday are also distinct offenses, as are the distinct acts of manufacturing methamphetamine on Mondays, Tuesdays, and Wednesdays. *Blockburger*, 284 U.S. at 302.

[14] *See Beaty v. Commonwealth*, 125 S.W.3d 196, 211 (Ky. 2003) ("Most jurisdictions that have considered the issue agree that convictions of 'manufacturing' and 'possessing' the same unit of a controlled substance fail the *Blockburger* test."); *Patton v. People*, 35 P.3d 124, 128-33 (Colo. 2001); *Craig v. State*, 863 S.W.2d 825, 827 (Ark. 1993) ("In proving the offense of manufacturing, the state must necessarily show the defendant has control of the controlled substance in order to manufacture it. That being so, possession of the substance is necessarily a lesser included of the offense of manufacturing."); *Anderson v. State,* 447 So. 2d 236, 238 n.3 (Fla. Dist. Ct. App. 1983) (possession of marijuana is "considered the 'same' offense for double jeopardy purposes" as manufacturing marijuana); *Mudd v. State,* 483 N.E.2d 782, 784 (Ind. Ct. App. 1985) ("The proof required to establish manufacture of marijuana necessarily establishes possession as well; one cannot knowingly or intentionally manufacture the drug without also possessing it to that end."). *Cf. United States v. Buchanan,* 830 F.2d 146, 148 (10th Cir. 1987) (holding that convictions for possession of and manufacturing an explosive device failed the *Blockburger* test and noting that "numerous courts . . . have recognized that possession is always incidental to manufacture and that the two offenses merge for the purposes of sentencing.").

consequence of its manufacture."[15]  These cases follow the same common-sense rationale

expressed in *Ball v. United States*,[16] in which the Supreme Court held that double jeopardy

barred the defendant's convictions for both receipt of a firearm by a convicted felon and

possession incidental to receipt of that same firearm.[17]  Because there is such a substantial

overlap between the act of manufacturing a specific quantum of drugs and the act of

possessing of those drugs (the act of possession begins simultaneously with start of

manufacturing, and possession continues after the act of manufacturing is completed until

they are delivered or consumed), the two simultaneous acts are the "same" for double-

jeopardy purposes.

The State Prosecuting Attorney correctly notes that, under a strict *Blockburger* test

that looks only to the formal elements of the statute, a few federal cases have gone the other

way and held that a defendant could be punished twice for simultaneously manufacturing and

---

[15] *Patton*, 35 P.3d at 127, 131 ("Comparing the meanings of 'manufacture' and 'possession,' it is evident that one who manufactures a controlled substance also possesses the substance in the course of manufacturing it. 'Possession' requires immediate and knowing control over the substance. Logic dictates that such control is required in the production of the substance. . . .  We can envision no scenario in which an individual can manufacture methamphetamine without also possessing it.").

[16] 470 U.S. 856 (1985).

[17] *Id.* at 862 (applying *Blockburger* test to the firearm statutes and finding that "it is clear that Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon."). As the Supreme Court noted, "[t]he independent but overlapping statutes simply are not 'directed to separate evils' under the circumstances." *Id.* at 864 (internal citations omitted).

possessing with intent to deliver illegal drugs.[18]  But, as the Supreme Court itself stated in *Ball*, the *Blockburger* "test" is merely a rule of statutory construction to ascertain congressional intent.[19]  It is not a shibboleth that defines double jeopardy.  In *Ball,* the Court rejected a strict *Blockburger* elements test because "Congress seems clearly to have recognized that a felon who receives a firearm must also possess it, and thus had no intention of subjecting that person to two convictions for the same criminal act."[20]  Similarly, in the context of the offense of "Manufacture or Delivery of Substance in Penalty Group 1," the Texas Legislature seems clearly to have recognized that a person who manufactures methamphetamine must also possess it, and thus it had no intention of subjecting a person to two convictions for the same criminal act.

## III.

But that does not end our double-jeopardy inquiry because the trial record supports a finding that appellant committed more than one single act of manufacturing methamphetamine.  Appellant possessed three different bottles of methamphetamine-saturated liquid.  At least two of them contained more than four grams of methamphetamine

---

[18] *See United States v. Miller*, 870 F.2d 1067, 1069-72 (6th Cir. 1989) (holding that manufacture of marijuana and possession of marijuana with intent to distribute are two statutory offenses which may be punished cumulatively); *United States v. Zamora*, 784 F.2d 1025, 1029 (10th Cir. 1986) (holding that "manufacture and possession with intent to deliver [methamphetamine] are distinct offenses for which different facts must be proven.").

[19] *Ball*, 470 U.S. at 861 ("The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes.").

[20] *Id.* at 862.

and each of those two was in a different stage of the manufacturing process. The first– the large glass jar– contained both a top layer of meth liquid and a lower layer of "sledge." This "brew" was seized while it was at an earlier stage of the methamphetamine manufacturing process than the two-layered liquid in the Dr. Pepper bottle. Thus, appellant did not manufacture these distinct caches of methamphetamine with a single act or continuum of acts. He started the brew for one batch of meth and took it through several steps in the process before he started the brew for the second batch of meth. Each "brew" required a new culpable intent and constituted a new prohibited act. The record is not clear how much time could have or must have passed between starting the first "brew" and then starting the second "brew,"[21] but the state's chemist was clear that the process was not simultaneous. There is no double-jeopardy bar to multiple punishments for multiple violations of the same statutory offense.[22] Here, as in *Blockburger*, the first act in starting to manufacture a "brew" of meth

---

[21] Had appellant raised his double-jeopardy claim in the trial court, the witnesses might have been clearer in their testimony concerning the distinct and separate processes. But, because appellant did not raise any such issue in the trial court, he has the burden to show that the trial record "clearly" shows a double-jeopardy violation; the State does not carry any such burden. *See Gonzalez*, 8 S.W.3d at 645-46 ("Timely raising the [double-jeopardy] matter in the trial court would have provided the trial court and the prosecution an opportunity to remove the basis of the objection, and it also would have provided the prosecution the opportunity to obtain an aggravated robbery conviction based on paragraph two without the risk of an unnecessary retrial in the face of a valid multiple punishments claim.").

[22] *Blockburger*, 284 U.S. at 302. Double jeopardy does not bar prosecution for distinct possession, delivery, or manufacturing offenses where separate drug quantities are identified for each offense. *See Smith v. State,* 873 S.W.2d 773, 775 (Tex. App.–Fort Worth 1994, no pet.) (possession and delivery of cocaine); *Toro v. State*, 780 S.W.2d 510, 512 (Tex. App.–San Antonio 1989, no pet.) (possession and delivery of cocaine); *Torrez Diaz v. State,* 762 S.W.2d 701, 704 (Tex. App.–Houston [14th Dist.] 1988) (possession and delivery of cocaine), *pet. ref'd,* 796 S.W.2d 183 (Tex. Crim. App.1990). *See also Patton v. People*, 35 P.3d 124, 131 (Colo.

evidenced by the liquid in the Dr. Pepper bottle had been completed before the second act of starting to manufacture a "brew" of meth in the large glass jar began.[23]

In this case, therefore, appellant could have been convicted of two counts of manufacturing methamphetamine, two counts of possessing methamphetamine with the intent to deliver it, or one count of each. This is because there were two separate acts of manufacturing two separate brews, one the nearly finished product ready for delivery, the other still in the manufacturing process.

I therefore agree that appellant has failed to show that a double-jeopardy violation is "clearly apparent" on the face of the trial record.

Filed: December 9, 2009

Publish

---

2001) (double jeopardy bars multiple convictions for both manufacturing and simultaneously possessing the same cache of methamphetamine, but noting that "a defendant may be convicted lawfully of both manufacture and possession of a controlled substance if the defendant is convicted of possessing the substance during one time period and manufacturing it in another time period, or separate transactions of possession and manufacture in the same time period.").

[23] *Blockburger*, 284 U.S. ast 302-03 ("The contention on behalf of petitioner is that these two [drug] sales, having been made to the same purchaser and following each other, with no substantial interval of time between the delivery of the drug in the first transaction and the payment for the second quantity sold, constitute a single continuing offense. . . . In the present case, the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one–that is to say, of a new bargain.").