

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00345-CV

IN THE MATTER OF R.F.

----------

### FROM THE 43RD DISTRICT COURT OF PARKER COUNTY
### TRIAL COURT NO. JV13-0006

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In a single issue, appellant R.F. complains that he received ineffective assistance of counsel at his juvenile probation revocation hearing. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

R.F. was twelve years old when he committed two counts of aggravated sexual assault of a child. After pleading "True" to the charges, R.F. was found to have engaged in delinquent conduct in violation of penal code section 22.021, and the trial court sentenced him to a period of two years' probation with placement in a residential sexual offender treatment facility and boot camp program. *See* Tex. Penal Code Ann. §22.021 (West Supp. 2014); Tex. Fam. Code Ann. §51.03(a)(1) (West 2014). R.F. began the Cooke, Fannin, and Grayson County Boot Camp (the Boot Camp) and sexual offender treatment program but was discharged after nine months because he exposed his genitals to other residents.

On June 23, 2014, the State petitioned to modify R.F.'s disposition on the grounds that he had violated his conditions of probation by (1) committing the further offense of recklessly exposing his genitals with the intent to arouse or gratify his sexual desire; (2) failing to complete the Boot Camp's programs, follow all of the facility's rules, and not leave the facility without permission; and (3) failing to attend, participate in, and successfully complete a sex offender counseling program and an aftercare program with a registered sex offender treatment therapist.

At the modification hearing, the state called three witnesses: Karla Doster, Jonathan Neece and Scott Gieger. Doster, R.F.'s case manager, testified that almost immediately after R.F. began the Boot Camp program on September 6,

2

2013, he started accumulating behavior citations for breaking the rules.[2] According to Doster, R.F. exhibited defiance toward staff and authority figures, cursed at and threatened staff, and refused to participate in the program. During his nine-month stay at the Boot Camp, R.F. received 113 violations for misbehavior, ranging from using profanity, disrupting group therapy sessions, making inappropriate sexual comments, gestures, and overtures toward peers and staff, and making false allegations towards staff, to exposing his genitals. Doster also testified generally about R.F.'s disrespect for authority and refusal to take personal responsibility for his choices.

Neece, R.F.'s sex offender treatment therapist, testified that the Boot Camp program consisted of three phases, and that most program participants completed the first phase within four to five months. After nine months in the program, R.F. remained in phase one. Neece testified that, while in early 2014 R.F. began to apply himself and succeed in school, R.F.'s defiant and disrespectful behavior toward the rules and authority never waned.

Both Doster and Neece testified that on June 11, 2014, R.F. exposed his genitals to another resident. R.F admitted that he did this.

---

[2]The Boot Camp program operates on a points system, wherein each resident is eligible to receive 20 points per day for good behavior. Points can be deducted for misbehavior, and if a resident continued to misbehave, he could be confined to the "Brig," where he would be required to sit quietly on a bench. In the 281 days R.F. spent at the Boot Camp, he was confined to the "Brig" approximately 30 times, and while he could have earned as many as 5,620 points during that time, he earned only 758.

3

Gieger, R.F.'s juvenile probation officer, testified that the June 11 incident, in combination with his ongoing concerns regarding R.F.'s overall lack of progress in the program, was the last straw. R.F. was discharged from the Boot Camp two days later.

The trial court found that R.F.'s act of exposing himself to other program participants on June 11 and his subsequent discharge from Boot Camp constituted violations of the conditions of his probation and ordered that R.F. be committed to Texas Juvenile Justice Department (TJJD) for a period of time "not to exceed the time when he shall be 19 years of age." *See* Tex. Fam. Code Ann. § 54.05 (West 2014); Tex. Hum. Res. Code Ann. § 245.151 (West 2013).

### III. Ineffective Assistance of Counsel

R.F. complains in one issue of ineffective assistance of counsel. His complaint focuses on Gieger's testimony that in reviewing R.F.'s progress and making the decision to remove R.F. from the program, "the fact that there was another offense that basically was a sexual act," was "kind of [the] straw that broke the camel's back." He also complains about Doster's testimony that "several other recruits were providing statements that [R.F.] was touching them, rubbing against them, et cetera, during the POD and in class," that "other inmates wrote statements" and that "there 'were allegations made by the other residents that he was engaged in . . . sexual impropriety'." R.F. contends that by failing to object to the testimony regarding these extraneous offenses under the Confrontation Clause, his counsel provided ineffective assistance of counsel.

4

Juveniles have a constitutional and statutory right to effective assistance of counsel. *In re R.D.B.,* 102 S.W.3d 798, 800 (Tex. App.—Fort Worth 2003, no pet.); *In re F.D.,* 245 S.W.3d 110, 114 (Tex. App.—Dallas 2008, no pet.). The effectiveness of counsel's representation in a juvenile proceeding is to be reviewed under the two prong *Strickland v. Washington* standard. 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984). To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Id.* at 687; *Nava v. State,* 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State,* 988 S.W.2d 770, 771 (Tex. Crim. App. 1999). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State,* 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson,* 9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson,* 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland,* 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava,* 415 S.W.3d at 307. Review of

5

counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, the appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070.

6

No record was developed of counsel's reasons for failing to lodge a Confrontation Clause objection to the testimony regarding these extraneous offenses. Our scrutiny of his performance "must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight." *Lopez v. State*, 80 S.W.3d 624, 630 (Tex. App.—Fort Worth 2002), *aff'd,* 108 S.W.3d 293 (Tex. Crim. App. 2003). Because the record is silent, R.F. has failed to rebut the presumption that his counsel acted reasonably. *See, id.* ("Where the record is silent as to counsel's reasons for failing to object, the appellant fails to rebut the presumption that counsel acted reasonably.").[3]

---

[3]Because the record is silent as to counsel's reasoning, we do not reach the issue of whether the Confrontation Clause applies in probation revocation hearings. Some of our sister courts have held that it does not, although at least one court has assumed without deciding that a defendant can raise a Confrontation Clause objection in a community supervision revocation proceeding. *Compare Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding the Sixth Amendment right to confrontation as set out in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004) does not apply to probation revocation hearings), *Diaz v. State*, 172 S.W.3d 668, 672 (Tex. App.—San Antonio 2005, no pet.) (holding *Crawford* does not apply to community supervision revocation hearings), *and Smart v. State*, 153 S.W.3d 118, 121 (Tex. App.—Beaumont 2005, pet ref'd), *cert. denied,* 546 U.S. 1016, 126 S.Ct. 663, 163 L.Ed.2d 527 (2005) (same), *with Blackman v. State*, No. 01-12-00525-CR, 2014 WL 50804, at *2 (Tex. App.—Houston [1st Dist.] pet. ref'd) (assuming without deciding that *Crawford* does apply to community supervision revocation hearings on the basis of the Court of Criminal Appeals' holding in *Ex Parte Doan,* 369 S.W.3d 205 (Tex. Crim. App. 2012), that such hearings are judicial, not administrative, hearings). *See also, Cantu v. State*, 339 S.W.3d 688, 690–91 (Tex. App.—Fort Worth 2011, no pet.) (discussing state and federal court holdings that the Confrontation Clause does not extend to probation revocation hearings).

Even if the Confrontation Clause would render the statements by Doster and Neece inadmissible, the second prong of *Strickland* requires that the failure to object be so serious that it deprived R.F. of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Doster and Neece testified that R.F. admitted to them that he had exposed his genitals to another resident, and as a result, he was expelled from the program. Doster listed in her summary of his placement stay that this occurred on June 11, 2014, and the trial court admitted her summary as part of Gieger's supplemental case history at the hearing. Notwithstanding whether R.F. engaged in any other extraneous offenses, proof by a preponderance of the evidence of any *one* of the alleged violations of the probation conditions is sufficient to support the revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980) (proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order).

Therefore, this evidence of the June 11 incident, standing alone, was sufficient to support the revocation of R.F.'s probation. *See, e.g.*, *In re R.L.R. III*, No. 14-06-00926-CV, 2008 WL 323758, at *4 (Tex. App.—Houston [14th Dist.] Feb. 7, 2008, no pet.) (counsel was not ineffective when appellant had admitted to his probation officer that he violated the conditions of his probation); *Bennett v. State*, 705 S.W.2d 806, 807 (Tex. App.—San Antonio 1986, no writ) ("In the light of appellant's admission [to violating three conditions of his probation], it is

8

difficult to see how his attorney's conduct could effect a different result."); *Herrera v. State*, 656 S.W.2d 148, 149 (Tex. App.—Waco 1983, no writ) ("[A]n oral admission of a violation of the probation terms, made by probationer to his probation officer, is sufficient to revoke probation.").

Therefore, there is no reasonable probability that the proceeding's result would have been different even without the evidence regarding extraneous offenses. *See Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. Thus, counsel's failure to object to this testimony did not deprive R.F. of a fair trial. We overrule R.F.'s sole issue.

## IV. Conclusion

Having overruled R.F.'s sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: DAUPHINOT, GARDNER, and SUDDERTH, JJ.

DELIVERED: October 8, 2015

9