

# IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

## NOS. PD-0275-18 & PD-0276-18

## SHANNA LYNN HUGHITT, Appellant

## v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE ELEVENTH COURT OF APPEALS
## BROWN COUNTY

**NEWELL, J., delivered the opinion of the Court, in which KEASLER, HERVEY, RICHARDSON, YEARY, KEEL, WALKER, and SLAUGHTER, JJ., joined. KELLER, P.J., concurred.**

Shanna Lynn Hughitt was charged with and convicted of engaging in organized criminal activity ("engaging") based on the predicate offense of possession of a controlled substance with intent to deliver. The issue here is whether that offense—possession of a controlled substance with intent to deliver—is a valid predicate offense for the crime of engaging.

The issue turns on whether the phrase "unlawful manufacture, delivery" as it modifies "controlled substance" in Section 71.02(a)(5) of the Texas Penal Code references the offense of "possession of a controlled substance with intent to deliver." If it does, then possession with intent to deliver is a predicate offense. If not, then it is not. The court of appeals concluded that the words "manufacture, delivery" were inconsistent with the offense of "possession with intent to deliver." Consequently, the court of appeals held that possession with intent to deliver was not a predicate offense for the crime of engaging. We agree and affirm.

## I.    Background

Shanna Lynn Hughitt was living with Kevin Sliger, a self-described drug addict and methamphetamine dealer. The Brown County Sheriff's Office was conducting an investigation into methamphetamine distribution in Brownwood, Texas. In furtherance of that investigation, the Sheriff's Office executed a search warrant at Hughitt and Sliger's home.

When executing the warrant, police found Sliger in the dining room with illegal drugs on his person. Hughitt was found in a bedroom with about one gram of meth and a glass pipe under her clothes. There was also an ounce of marijuana in the bedroom closet and a gallon-sized

ziploc bag with meth residue under the mattress. Other items found in the house included cash, drug packaging, rolling papers, syringes, scales, a digital police scanner, and a large amount of MSN "cut."[1]

The State charged Hughitt with the offense of engaging predicated on committing the offense of possession of a controlled substance with intent to deliver.[2] Hughitt filed a motion to quash the indictment, arguing that possession of a controlled substance with intent to deliver is not a predicate offense under the engaging statute. In other words, prior to trial, Hughitt asserted that the indictment failed to allege the offense of engaging.[3] The trial court denied the motion. Hughitt proceeded to trial, and a jury found her guilty. The trial court sentenced Hughitt to 18 years' imprisonment.

---

[1] At trial, Investigator Carlyle Noe Grover with the Brown County Sheriff's Office explained that MSN is "like a supplement used for horses." He further explained the meaning of "cut": "Cut is just like—it creates more volume or more weight for the drug. . . . And what they will do is, say, if you buy an ounce of methamphetamine and you put another ounce of cut in there, now you have 2 ounces of methamphetamine. So, you can double your profits."

[2] Hughitt was also charged with possession with intent to deliver methamphetamine in an amount between four and 200 grams for which she was convicted and sentenced to 10 years' imprisonment. The court of appeals held that the evidence was insufficient to support that conviction and ordered it reformed to reflect the lesser included offense of possession with intent to deliver between one and four grams. That conviction is not at issue here. See note 44.

[3] Hughitt does not argue that the indictment in this case failed to vest the district court with subject-matter jurisdiction. *See, e.g.*, *Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007) (holding that an indictment failing to allege every element of the felony offense of hindering apprehension nevertheless vested the district court with subject matter jurisdiction).

Hughitt appealed, arguing, among other things, that the trial court erred in denying her motion to quash the indictment. The court of appeals agreed, holding that possession with intent to deliver is not a predicate offense under the engaging statute.[4] The court of appeals reasoned that the engaging statute only lists manufacture or delivery of a controlled substance as relevant possible predicate offenses—not the distinct offense of possession with intent to deliver.[5] The court further explained that incorporating possession with intent to deliver into "unlawful manufacture, delivery, . . . of a controlled substance" in Section 71.02(a)(5) would be inconsistent with the Health and Safety Code's definitions of "manufacture" and "delivery."[6] Thus, the court of appeals in this case vacated Hughitt's engaging conviction and dismissed the indictment because the indictment failed to allege an offense under

---

[4] *Hughitt v. State*, 539 S.W.3d 531 (Tex. App.—Eastland 2018).

[5] *Id.* at 537.

[6] *Id.* The Health and Safety Code defines "manufacture," in relevant part, as: "[T]he production, preparation, propagation, compounding, conversion, or processing of a controlled substance other than marihuana, directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes the packaging or repackaging of the substance or labeling or relabeling of its container. . . ." TEX. HEALTH & SAFETY CODE § 481.002(25). The definition for "delivery" states: "[T]o transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia." TEX. HEALTH & SAFETY CODE § 481.002(8).

the engaging statute.

The State Prosecuting Attorney's Office filed a petition for discretionary review with this Court.  The SPA argues that the court of appeals erred in vacating the conviction and dismissing the indictment. The SPA asks us to hold that possession with intent to deliver is a predicate offense under the engaging statute.  We decline to do so.

## II.    Standard of Review and Applicable Law

"An 'indictment' is the written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense."[7]  In other words, an indictment must state facts that, if proved, show an actual violation of the law.[8]  The sufficiency of an indictment is a question of law.[9]  When reviewing the denial of a motion to quash turns solely upon the issue of the sufficiency of the indictment, we review the trial court's decision *de novo*.[10]

Generally, an indictment that tracks the language of the applicable

---

[7] TEX. CODE CRIM. PROC. art. 21.01.

[8] *Posey v. State*, 545 S.W.2d 162, 163  (Tex. Crim. App. 1997).

[9] *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).

[10] *Id.*

statute will satisfy constitutional and statutory requirements.[11]  The first step in this analysis is to identify the elements of the offense.[12]  Here, the State argues that the predicate offense of possession of a controlled substance with intent to deliver can be an element of the offense of engaging.  Hughitt argues that it cannot.  To determine who is correct, we must analyze the engaging statute to determine whether the indictment alleges the necessary elements of the offense charged.

Our precedents hold that, when interpreting a statute, we seek to effectuate the "collective" intent or purpose of the legislators who enacted the legislation.[13]  We read the statute as a whole and give effect to the plain meaning of the statute's language, unless the statute is ambiguous or the plain meaning leads to absurd results.[14]  To determine plain meaning, we look to the statute's literal text and construe the words according to rules of grammar and usage.[15]  We presume that every word

---

[11] *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998).

[12] *State v. Jarreau*, 512 S.W.3d 352, 354 (Tex. Crim. App. 2017).

[13] *Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014).

[14] *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015); *see also Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("[I]f the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.").

[15] *Yazdchi*, 428 S.W.3d at 837.

in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible.[16]

## III. The Words "Manufacture, Delivery" in Section 71.02(a)(5) Do Not Reference the Distinct Offense of "Possession of a Controlled Substance With Intent to Deliver"

Section 71.02 of the Penal Code makes it an offense to engage in organized criminal activity.[17] A person commits that offense if the person "commits or conspires to commit one or more" predicate offenses (with the specific intent described in the statute).[18] Part (a) of Section 71.02 lists the predicate offenses for engaging. Subsection (a)(5)—the subsection at issue here—lists as a predicate:

> *unlawful manufacture, delivery,* dispensation, or distribution *of a controlled substance* or dangerous drug or unlawful possession of a controlled substance or dangerous drug through forgery, fraud, misrepresentation, or deception.[19]

Here, only the first clause of (a)(5) is at issue. Both parties assert that the statutory language—"unlawful manufacture, delivery, . . . of a controlled substance"—is unambiguous. And we agree. However, the

---

[16] *Liverman*, 470 S.W.3d at 836.

[17] TEX. PENAL CODE § 71.02.

[18] TEX. PENAL CODE § 71.02(a).

[19] TEX. PENAL CODE § 71.02(a)(5) (emphasis added). The SPA does not argue that Hughitt's conduct falls within the second clause of (a)(5)—specifically, "unlawful possession of a controlled substance or dangerous drug through forgery, fraud, misrepresentation, or deception."

parties disagree on the meaning of the statutory language and how it should be interpreted. There is no question that Section 71.02(a) does not explicitly include the crime of "possession with intent to deliver" as a predicate offense. The issue instead is whether our Legislature's use of the words "manufacture, delivery" to modify "controlled substance" includes, by way of reference, the offense of "possession with intent to deliver." We conclude that it does not.

In the SPA's view, the words "manufacture, delivery" in (a)(5) should be treated as a broader reference to offense headings rather than as a description of specific offenses. Treated as such, the use of the words "manufacture, delivery" demonstrates the Legislature's intent to include the offense of possession with intent to deliver as a predicate offense for the greater offense of engaging. The SPA asserts that, reading the original statute as a whole, "most of the predicate offenses are listed by statutory section heading." This suggests, according to the SPA, that the phrase "manufacture, delivery . . . of a controlled substance" is a reference to offense headings in the Controlled Substances Act.[20]

---

[20] State's Br. 18; *see, e.g.,* TEX. HEALTH & SAFETY CODE § 481.112 ("Offense: Manufacture or Delivery of Substance in Penalty Group 1.").

The SPA points to the fact that, "[w]hen the [engaging statute] was created in 1977, there was a single, comprehensive offense in the Controlled Substances Act with the section heading 'Unlawful Manufacture or Delivery of Controlled Substances.'"[21] Possession with intent to deliver was an offense under that section heading.[22]  In the SPA's view, the Legislature intended to reference that section heading in the Controlled Substances Act (which, following some amendments, was codified in the Health and Safety Code).  Therefore, the SPA concludes, "manufacture, delivery" includes the offense of possession of a controlled substance with intent to deliver, making it a predicate offense under the engaging statute.

We have addressed the language of (a)(5) in another context.  In *Nichols v. State*, the appellant argued that (a)(5) was vague because "deliver" and "controlled substance" are not defined in the Penal Code.[23]

---

[21] State's Br. 18.  The Controlled Substances Act has been amended a few times since its original enactment.  As the SPA points out, the Act originally had one comprehensive Manufacture or Delivery heading for all penalty groups.  *See* Act of 1973, 63rd Leg., R.S., ch. 429, § 4.03, 1973 Tex. Gen. Laws 1132, 1153-54.  One of the amendments split that statute into multiple statutory sections by penalty group.  *See* Act of 1981, 67th Leg., R.S., ch. 268, § 3, secs. 4.03, 4.031, 4.32, 1981 Tex. Gen. Laws 696, 698–99.   The Controlled Substances Act was later codified into the Health and Safety Code.  *See* TEX. HEALTH & SAFETY CODE §§ 481.112, .1121, .113, .114.

[22] *See* Act of 1973, 63rd Leg., R.S., ch. 429, § 4.03, 1973 Tex. Gen. Laws 1132, 1153-54.

[23] *Nichols v. State*, 653 S.W.2d 768, 771 (Tex. Crim. App. 1981) (panel op.).

We held that the statute was not vague, reasoning:

> We think it obvious that the references of Sec. 71.02(a)(5) to "unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug, or unlawful possession of a controlled substance or dangerous drug through forgery, fraud, misrepresentation, or deception" are necessarily references to those offenses as defined in the Controlled Substances Act and the Dangerous Drugs Act.[24]

In a possession with intent to deliver case, *Lopez v. State*, we recognized the purpose of including possession with intent to deliver under "manufacture or delivery" offenses.[25] We stated that, through that inclusion, the Legislature has

> ensured that society's hands are not tied in prosecuting what is, for all intents and purposes, a delivery, merely because the drugs did not actually make it all the way into the buyer's hands. Under Section 481.112, [which proscribes manufacture or delivery of a substance in penalty group 1,] the fact that a transfer is thwarted will not negate conviction for delivery of that drug.[26]

*Nichols*, at least, would seem to support the SPA's contention that (a)(5) merely references offense headings and does not set out specific

---

[24] *Id.*

[25] *Lopez v. State*, 108 S.W.3d 293, 300 (Tex. Crim. App. 2003).

[26] *Id.*; *see also id.* at 303 (Keller, P.J., concurring) ("By also including a clause proscribing possession with intent to manufacture or deliver, the Legislature made evident its intent that equal punishment should be imposed against those who are stopped by law enforcement from reaching their objective, whether it is the manufacture or the delivery of the illegal drug.").

offenses.  That interpretation, however, fails to give effect to the plain meaning of "manufacture" and "delivery."

When determining the meaning of a statutory term, the most obvious place to start is the statutory definition.  Here, the Penal Code does not define "manufacture" or "delivery."  But the Health and Safety Code, which outlines the offenses dealing with controlled substances, does.

The Health and Safety Code defines "manufacture," in relevant part, as:  "[T]he production, preparation, propagation, compounding, conversion, or processing of a controlled substance[,] . . . directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes the packaging or repackaging of the substance or labeling or relabeling of its container. . . ."[27]  In short, that definition requires the act of extraction or chemical synthesis, packaging or repackaging, or labeling or relabeling.  It does not include possession with intent to deliver, by itself, without one of those specified acts.

And, as a plurality of this Court has previously recognized in the

---

[27] Tex. Health & Safety Code § 481.002(25).

double-jeopardy context, manufacturing and possessing with intent to deliver "do not have a common 'focus.' The focus of the manufacturing offense is on the production of a controlled substance while the focus of the possession-with-intent-to-deliver offense is on delivering what has been manufactured."[28]  Thus, we conclude that our Legislature's use of the word "manufacture" was not intended as a reference to the distinct offense of "possession with intent to deliver."  We now turn to "delivery."

The Health and Safety Code defines "deliver," in relevant part, as: "[T]o transfer, actually or constructively, to another a controlled substance . . . ."[29]  That definition requires more than the act of possessing a controlled substance even if the act is accompanied by an intent to later deliver that substance; it requires an act of transfer—either actual or constructive—to constitute "delivery."[30]

The Health and Safety Code's definition is consistent with standard

---

[28] *Guerrero v. State*, 305 S.W.3d 546, 556 (Tex. Crim. App. 2009) (plurality op.).

[29] TEX. HEALTH & SAFETY CODE § 481.002(8).  While the wording of the definition was slightly different when the EOCA was originally enacted, the substance of the relevant part remains the same.  *See* Act of 1973, 63rd Leg., R.S., ch. 429, § 1, sec. 1.02(8), 1973 Tex. Gen. Laws 1132, 1133 ("'Deliver' or 'delivery' means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. . . .").

[30] *Actual Delivery*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The act of giving real and immediate possession to the buyer or the buyer's agent."); *Constructive Delivery*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An act that amounts to a transfer of title by operation of law when actual transfer is impractical or impossible. . . .").

dictionary definitions of "delivery."[31]  For example, Webster's Third New International Dictionary defines "deliver" as: "[T]he act of putting property into the legal possession of another . . . whether involving the actual transfer of the physical control of the object from one to the other or being constructively effected in various other ways . . . ."[32]  Other dictionaries provide similar definitions.[33]  Therefore, reading "delivery" to reference the offense of "possession with intent to deliver" would be inconsistent with both the Health and Safety Code's definition of "deliver" and standard dictionary definitions of "delivery."

Further, we must read the words "manufacture, delivery" in the context of the whole statute.[34]  Doing so leads to two important indicators

---

[31] *See Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009) ("When attempting to discern that fair, objective meaning, we may consult standard dictionaries.").

[32] *Delivery*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002).

[33] *Delivery*, AMERICAN HERITAGE DICTIONARY (5th ed. 2016) ("2a. The act of transferring to another. b. Law A formal act of transferring ownership of property to another: delivery of a deed. . . .") (emphasis removed); *Delivery*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The formal act of voluntarily transferring something. . . ."); *Delivery*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) ("*Law* [T]he formal or symbolic handing over of property, esp. a sealed deed, to a grantee or third party. . . ."); *Delivery*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (5th ed. 2014) ("*Law a)* the irrevocable transfer of a deed or other instrument of conveyance *b)* the transfer of goods or interest in goods from one person to another."); *Delivery*, DICTIONARY OF LEGAL TERMS (4th ed. 2008) ("[A] voluntary transfer of title or possession from one party to another; a legally recognized handing over to another one's possessory rights.  Where actual delivery is cumbersome or impossible, the courts may find constructive delivery sufficient if the intention is clearly to transfer title. . . .") (emphasis removed).

[34] *State ex rel. Wice v. Fifth Jud. Dist. Ct. App.*, ___ S.W.3d ___, 2018 WL 6072183, at *6 (Tex. Crim. App. Nov. 21, 2018); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 167

of legislative intent.  First, if the Legislature wanted to reference specific statutory sections to identify viable predicate offenses, it could have done so.  In fact, the Legislature did just that in other statutory subsections.  For example, Section 71.02(a)(11) designates "any offense under Section 37.11(a)" as a viable predicate for the offense of engaging.[35]  Similarly, Section 71.02(a)(15) designates "any offense under Section 42.10" as a viable predicate offense.[36]  And, when our Legislature wanted to designate a broader array of offenses within a statutory scheme, it identified possible predicate offenses as contained within statutory chapters.[37]

Indeed, our Legislature demonstrated its intent to reference offense headings within the Health and Safety Code in another section of the Organized Crime Chapter in the Penal Code.  Section 71.023 creates the umbrella offense of directing activities of criminal street gangs.[38]  As

---

(2012) ("Context is a primary determinant of meaning.").

[35] TEX. PENAL CODE § 71.02 (a)(11).  Section 37.11(a) makes it an offense to impersonate a public servant.  See TEX. PENAL CODE § 37.11(a).

[36] TEX. PENAL CODE § 71.02 (a)(15).  Section 42.10 makes specific activities regarding dog fighting an offense.  See TEX. PENAL CODE § 42.10.

[37] TEX. PENAL CODE § 71.02(a)(10) ("any offense under Chapter 34, 35, or 35A").  Chapter 34 covers money laundering offenses, Chapter 35 covers insurance fraud, and Chapter 35A covers health care fraud.  See TEX. PENAL CODE chs. 34, 35, 35A.

[38] Specifically, Texas Penal Code § 71.023 states: "A person commits an offense if the person, as part of the identifiable leadership of a criminal street gang, knowingly

Hughitt points out, Section 71.023—unlike Section 71.02(a)—explicitly references Health and Safety Code provisions. Hughitt asserts that "[i]f the legislature intended for the [engaging] statute to be read in conjunction with the Health and Safety Code, it could have referenced the Health and Safety Code in Section 71.02, as it did in Section 71.023."[39] The State argues that this supports its argument because it is improbable that the Legislature would exempt possession with intent to deliver as a predicate offense for gang members but include it for gang leaders.

We agree with Hughitt. The Legislature knows how to specifically reference chapters, headings, and sections in the Penal Code, as well as other codes, so that all offenses under those chapters, headings, and sections are included within that reference.[40] Yet it chose not to explicitly reference the Health and Safety Code in Section 71.02(a), suggesting that the Legislature did not intend the words "manufacture, delivery" as references to offense headings within the Health and Safety Code.

---

finances, directs, or supervises the commission of, or a conspiracy to commit, one or more of the following offenses by members of a criminal street gang: . . . (3) an offense that is punishable under Section 481.112(e), 481.112(f), 481.1121(b)(4), 481.115(f), or 481.120(b)(6), Health and Safety Code." Tex. Penal Code § 71.023(a)(3).

[39] Hughitt's Br. 8.

[40] *Cf. Cornet v. State*, 359 S.W.3d 217, 222 (Tex. Crim. App. 2012) (stating that "when the Legislature desires to convey a certain level of specificity within a statutory provision, it knows how to do it").

Second, Section 71.02(a)(5) also provides for possession of a controlled substance as a predicate offense when that offense is committed under certain circumstances. The second clause of (a)(5) lists as a predicate: "unlawful *possession* of a controlled substance or dangerous drug *through forgery, fraud, misrepresentation, or deception*."[41] So unlawful possession of a controlled substance plus forgery, fraud, misrepresentation, or deception is a predicate offense. Our Legislature's limitation of the use of possession of a controlled substance as a predicate felony to those circumstances—forgery, fraud, misrepresentation, or deception—implies that the Legislature intended to exclude possession with an intent to deliver as a possible predicate offense.[42]

The statutory text is "the best indicator of legislative intent[.]"[43] Here, our Legislature's use of the words "manufacture, delivery" to

---

[41] Tex. Penal Code § 71.02(a)(5) (emphasis added).

[42] A general rule of statutory interpretation is that the expression of one thing implies the exclusion of other, unexpressed things. *Chambers v. State*, ___ S.W.3d ___, 2019 WL 2612770, at *4 (Tex. Crim. App. June 26, 2019) (citing *State v. Hill*, 499 S.W.3d 853, 866 n.29 (Tex. Crim. App. 2016); Scalia & Garner, Reading Law 107).

[43] *Shipp v. State*, 331 S.W.3d 433, 437 (Tex. Crim. App. 2011) (plurality op.); *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 133 (Tex. 2013) ("We examine the statute's text, as it provides the best indication of legislative intent."); Scalia & Garner, Reading Law 56 ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.").

modify "controlled substance" were not intended as a reference to the distinct offense of "possession of a controlled substance with intent to deliver." Holding otherwise would require us to write language from the Health and Safety Code into the engaging statute in the Penal Code.

## IV.  Conclusion

Possession with intent to deliver is not a valid predicate under Section 71.02(a) of the Penal Code because the plain meaning of "manufacture, delivery" requires more than "possession with intent to deliver." Therefore, we agree with the court of appeals that the indictment in this case failed to allege an offense under the engaging statute.  We affirm the judgment of the court of appeals vacating Hughitt's conviction for engaging and dismissing the indictment.  We also dismiss PD-0276-18, as improvidently granted because the cause number for that conviction was erroneously included in the petition for discretionary review.[44]

---

[44] *See Hughitt*, 539 S.W.3d at 544–45 (reversing conviction in Cause No. 11-15-00278-CR for possession with intent to deliver methamphetamine in an amount between four and 200 grams in a drug-free zone; remanding the cause to the trial court to reform the judgment to reflect a conviction for the offense of possession with intent to deliver methamphetamine in the amount of one gram or more but less than four grams in a drug-free zone and to conduct a new trial as to punishment only).

Filed: September 25, 2019

Publish